JALIE vs. CARDINAL and another.

(1–9) LIABILITY OF INNKEEPER. (7–9) *Contributory negligence of guest.* (4, 8, 9) *Court and jury.* (11) *Reversal of judgment.* (12) *New trial for new evidence.*

1. Action upon defendants' liability as inn-keepers for the loss of money brought by plaintiff to their inn. Plaintiff was not a neighbor or friend of defendants, but a traveler residing at a distant place, who sought their inn for temporary lodging and entertainment. On coming thereto he asked one of the defendants whether they took boarders, and, being answered in the affirmative, inquired and was told the price of board by the week, and was thereupon received into the house. His intention, not communicated to defendants, was to remain only three or four days. *Held,* that there was no error in a refusal to instruct the jury that "if plaintiff was stopping at the hotel under an agreement to board by the week, he was not a guest but a boarder, and the common law liability of an innkeeper for the property of his guest did not apply."

2. If one goes to an inn as a wayfarer and a traveler, and the inn-keeper receives him as such, the relation of landlord and guest, with all its rights and liabilities, is instantly established between them.

Jalie vs. Cardinal and another.

3. Neither the length of time that a man remains at an inn, nor any agreement he may make as to the price of board per day or week, deprives him of his character as a traveler and guest, if he retains his *status* as a traveler in other respects.

4. It was a question of fact to be found by the jury upon all the evidence, and not one of law for the court, whether the plaintiff in this case was a boarder and not a guest.

5 Possession of money upon the person of the guest does not constitute such exclusive control and custody as will exonerate the innkeeper, except under certain peculiar circumstances.

6. In this case [no facts being shown upon which the court could hold as matter of law that the retention of the money by plaintiff on his person was negligence], it was not error to refuse an instruction that "if the money and property in question was upon the person and under the exclusive control of the plaintiff at the time of the loss, defendants were not liable."

7. It is now settled that *gross* negligence on the part of the guest need not be shown, to prevent his recovery; but that a want of ordinary care, contributing to the loss, is sufficient.

8. The question of contributory negligence on the part of the guest is one of fact for the jury, unless the evidence is too plain and positive for doubt or controversy.

9. In this case, there being evidence tending to show that plaintiff was intoxicated when he retired to his room about eleven o'clock A. M., and that he was negligent in not finding the key in his door and not locking the door, the question of negligence on his part was submitted to the jury. *Held*, no error as against defendants.

10. A judgment will not be reversed for the refusal of an instruction correct in law, when the facts found by the jury rendered it inapplicable.

11. The question whether the defendants were partners as innkeepers having been fairly submitted to the jury, and a verdict having been rendered against both defendants, and there being evidence to support a finding that they were such partners, the judgment will not be reversed on the ground that such partnership was not shown.

12. Motions for new trials on the ground of newly discovered evidence are granted with great caution; and the court did not err in denying such a motion where the new evidence was a written contract of partnership between defendants, supposed to show by its date that they were not partners at the time of plaintiff's loss, and where the affidavits in support thereof did not show that any effort was made to find such contract before the trial, nor under what circumstances, by what means, or where, it was found afterwards.

APPEAL from the Circuit Court for *Chippewa* County.

Action to recover for money alleged to have been lost to plaintiff, through defendants' negligence, while the former was stopping as a guest at the inn alleged to have been kept by defendants as partners. The defendants, in their answer, and also by affidavit, denied the allegation of partnership, but admitted that at the time plaintiff is alleged to have lost his money, *Cyril Cardinal*, one of the defendants, kept an inn. They denied also that the plaintiff was ever their guest; but alleged that at the time named in the complaint, he was a boarder by the week, under a contract with *Cyril Cardinal*, and that the money was lost through plaintiff's neglect.

On the trial, the evidence tended to show that he went to the hotel of defendants at the village of Chippewa Falls, in the evening of May 19th, and asked one of defendants if he kept boarders, and was told that he did; that nothing was said as to the length of time he would stay, but he expected to stay three or four days; that he had a homestead about fifty or sixty miles from said village, and was buying a plow and stove, etc., and preparing to go on his homestead; that on the 21st of May he went to the room which he had occupied while at the hotel, about 11 o'clock A. M., and lay down upon his bed; that before lying down he looked over his money, and had $175.00 in his pocket-book, which he placed in his pantaloons pocket; that before going to his room he told the clerk to wake him at two o'clock P. M., but the clerk did not wake him, and when he awoke his pocket-book and money were gone, and one of defendants' servants was in the room; that when he went to his room he looked for a key to his door, but could find none; that he did not know that the door had a catch which could be used as a lock; that he had taken drinks at several saloons on that day before going to bed.

The testimony for the defendants tended to show that when the plaintiff came to the hotel he asked one of them how much they charged per week for board, and was told $4.50 in cash,

or $5.00 in store orders; that he said he would come, and when he settled for his' board he paid by the week; that there was a lock on the inside of the door, so that it could have been locked without a key; that the key had been given to the person who occupied the room with the plaintiff, and who was a friend of plaintiff, several days before; that the plaintiff said, after the loss of his money, that he had forgotten to lock his door; that the key was usually kept in the door.

There was a conflict of testimony upon the issue of the partnership of the defendants. On the part of the plaintiff, John Young testified that the defendants were partners, and held themselves out as such. J. S. Carr, one of the witnesses for defendants, testified that he drew the articles of partnership between the defendants, and that he thought "the contract was made on the forenoon of May 21st." The witness added that he could not "place the hour, but it was between 10 A. M. and 5 P. M." of that day. The defendants testified that they did not become partners until about four o'clock P. M. of the 21st.

The instructions asked by defendants, and refused, sufficiently appear from the opinion.

Verdict for the plaintiff.

Defendants moved for a new trial, on the ground (among others) of newly discovered evidence; and presented affidavits stating in substance that the copartnership of the defendants was based upon an agreement drawn on the 3d of June, 1872, and had commenced on that day; and that the contract had been mislaid, and could not be found in time to be used for the trial. The motion was overruled; and from a judgment on the verdict, defendants appealed.

*C. J. Wiltse* (with *Wheeler* & *Marshall*, of counsel), for appellants:

1. There was no sufficient evidence that the defendants were partners at the time of the loss. The testimony of Young as to their general reputation as partners was not admissible.

*Halliday v. McDougall*, 20 Wend., 81; *Bryden v. Taylor*, 2 Har. & John., 296; *Brown v. Crandall*, 11 Conn., 92. 2. The verdict was contrary to evidence in finding that the loss occurred through the negligence of the appellants, in view of the intoxication of the plaintiff, and his negligence in leaving his door unfastened. *Kuehn v. Wilson*, 13 Wis., 104; *Adnis v. Wilson*, 7 How. Pr., 64. When the verdict is clearly against the weight of evidence, the judgment should be reversed. *Boyd v. Colt*, 2 How. Pr., 384; *Johnson v. Hamburger*, 13 Wis., 178; *Edmiston v. Garrison*, 18 id., 603; *Rockwell v. Mutual Ins. Co.*, 27 id., 372. 3. The relation of innkeeper and guest never existed between the plaintiff and defendants, but the plaintiff was a boarder by the week under a special contract. In such cases the innkeeper is not liable. Jones on Bailments, sec. 95, note 50; Buller's N. P., Bridgman's ed., 72; 5 Bacon's Abr., 235; Story on Con., 746; *Vance v. Throckmorton*, 5 Bush (Ky.), 41; Edwards on Bailments, 394; Roll's Ab., 3; Story on Bailments, 477. 4. The defendants were not liable, because the money was on the person and under the exclusive control of the plaintiff. Edwards on Bailments, 194; *Vance v. Throckmorton*, 5 Bush (Ky.), 41; *Weisenger v. Taylor*, 1 id., 275. 5. The verdict must dispose of all the issues in the case. *Everit v. Walworth Co. Bank*, 13 Wis., 419. 6. The charge was imperfect in not instructing the jury in relation to what constitutes a person a boarder, and what a guest; in relation to the liability of partners or losses accruing before the partnership was formed. The instructions offered on these points should have been given. *Lachner v. Salomon*, 9 Wis., 129; *Davenport v. Schram*, 9 id., 119; *Carpenter v. Stilwell*, 12 Barb., 128; *Simpson v. Black*, 27 id., 206; *Vroman v. Dewey*, 23 id., 530. 7. The refusal to grant a new trial was error. *Blood v. Whitman*, 3 Chand., 54; *Dunbar v. Hollinshed*, 10 Wis., 505.

*Bingham & Jenkins*, for respondent:

The question of fact as to the partnership was properly sub-

mitted to the jury, and the testimony given was admissible. Parsons on Partnership (2d ed.), 7; *McPherson v. Rathbone*, 11 Wend., 97; *Whitney v. Sterling*, 14 Johns., 215; *Gowan v. Jackson*, 20 id., 176; *Grieff v. Boudonsquie*, 18 La. Ann., 631; *Howe v. Thayer*, 17 Pick., 91; 2 Greenl. Ev. (Redfield's ed.), p. 438. 2. When the evidence is conflicting, or when it is not clear to the court that the jury was wrong, the verdict will not be disturbed. *Edmiston v. Garrison*, 18 Wis., 594; *Wendel v. North*, 26 id., 379; *Eaton v. Joint School District*, 23 id., 374. 3. The evidence showed, and the jury found, that the plaintiff was a guest, and not a boarder. If a trader who puts up at an inn, and is received there as a guest, makes an agreement with the innkeeper for the price of his board by the week, he does not thereby cease to be a guest and become a boarder. 2 Hilliard on Torts (3d ed.), 531; *Berkshire Woolen Co v. Proctor*, 7 Cush., 417; *Willard v. Reinhardt*, 2 E. D. Smith, 148; *Calye's Case*, 8 Coke, 32; 1 Smith's L. C., Part 1, H. & W.'s Notes, p. 241; *Coggs v. Bernard*, id., 401. And if he is still in reality a traveler, the making of a special agreement with the innkeeper for the price of his board by the week will not change his character as a guest. *Pinkerton v. Woodward*, 33 Cal., 557; *Norcross v. Norcross*, 53 Me., 163; *Hall v. Pike*, 100 Mass., 495; Story on Bailm. (8th ed.), p. 424. 4. An innkeeper is answerable for all losses happening to the goods of travelers becoming his guests, except such losses as are caused by the act of God or the public enemy, or by the conduct of the guest himself, or his servants, or the companion whom he brings with him. *Coggs v. Bernard*, 1 Smith's L. C., Pt. 1, H. & W.'s Notes, 401, and cases there cited. And on proof of loss, the burden of bringing the case within the exceptions is upon the innkeeper. *Norcross v. Norcross*, 53 Me., 169; *Shaw v. Berry*, 31 id., 479; *Mason v. Thompson*, 9 Pick., 280; Story on Bailm. (8th ed.), 412, 415. 5. The liability extends not only to goods and articles used in traveling, but to money retained in the guest's possession. *Kent v. Schuckard*, 2 Barn. &

Ad., 803; *Epps v. Hinds*, 27 Miss., 658; *Berkshire Woolen Co. v. Proctor*, 7 Cush., 417; *Hemistead v. Wilde*, 17 Q. B., 261; 6 Eng. L. & E., 349; *Quintin v. Courtney*, 1 Haywood, 40; 2 Kent's Com., 593; *Kellogg v. Sweeney*, 1 Lans., 397; *Weisenger v. Taylor*, 1 Bush (Ky.), 275; *Pope v. Hall*, 14 La Ann., 324; *Profilet v. Hall*, id., 524; *Packard v. Northcraft*, 2 Metc. (Ky.), 439; *Johnson v. Richardson*, 17 Ill., 302; 2 Tay. Stats., 1663, § 72; Edwards on Bailm., 399. 6. It would not have changed the liability of the innkeeper if there had been a key in the door, as defendants tried to show. *Calye's Case*, 8 Coke, 32 and 33; Story on Bailm. (8th ed.), 427; *Carpenter v. Taylor*, 1 Hilt., 193; Edwards on Bailm., 399; *Classen v. Leopold*, 2 Sweeny, N. Y., 705. 7. The instructions asked by defendants were properly refused. *Coggs v. Bernard*, above cited; 2 Hilliard on Torts (3d ed.), 531; *Berkshire Woolen Co. v. Proctor*, 7 Cush., 417; *Willard v. Reinhardt*, 2 E. D. Smith, 148; Edwards on Bailm., 391; *Burgess v. Clements*, 4 Maule & Sel., 366; *Weisenger v. Taylor*, 1 Bush (Ky.), 275. 8. A judgment will not be reversed for erroneous instructions, where it is clear the appellants could not have been injured thereby. *Leopold v. Van Kirk*, 29 Wis., 548. 9. This court should not interfere with the order refusing a new trial. Simmons' Wis. Dig., 552, "NEW TRIAL," I.; *Jones v. Evans*, 28 Wis., 168.

DIXON, C. J. It was submitted to the jury to determine whether the defendants were partners, or not, at the time the money in question was stolen; and they were instructed that if no partnership existed, then their verdict should be for the defendants. The jury returned a verdict against the defendants, and hence must have found that the defendants were partners at the time of the loss. It is now insisted that there was no sufficient evidence to sustain this finding. It appears to us that, upon the testimony of the defendant *Cyril Cardinal* and his witness Carr alone, the verdict cannot be said to have been wholly unsustained by evidence. The jury might have found

Jalie vs. Cardinal and another.

from the statements of those witnesses, that the bargain was completed and the partnership in existence before the hour of the day on which the plaintiff lost his money. *Cardinal* said about four o'clock in the afternoon; but Carr, who drew the contract, thought it was made in the forenoon. The jury may have considered Carr correct, and, so determining, their verdict cannot be said to have been unfounded. We thus find that the verdict was not without evidence to support it, even though we reject the testimony of the witness Young, as incompetent or insufficient, for the reason that it was proof of partnership by common reputation merely.

The overruling of the motion for a new trial on the ground of newly discovered evidence was not an abuse of the discretionary power vested in the circuit court. Such motions are received with great caution. *Conradt v. Sixbee*, 20 Wis., 383. They are regarded with suspicion and disfavor. *Edmiston v. Garrison*, 18 id., 594, 603. The reasons for such regard are stated in the case last cited; and the affidavits upon which this motion was founded state no facts to obviate those reasons. They state nothing to rebut the presumption of intentional omission or unpardonable negligence in not having discovered the contract so as to have used it in evidence on the trial. Mr. Richardson says that "the defendants and their counsel first discovered the date of the instrument after the cause had been submitted to the jury;" and the defendant *Cyril Cardinal* deposes that he "could not find it in time to be used on the trial of said action." This is all the explanation contained in the affidavits. Not one word is said to show that any effort or diligence was used to find the contract before trial, or to show where, under what circumstances, or by what means, it was found afterwards. The application was properly rejected, under the rule laid down in *Edmiston v. Garrison*.

The action was one which would have formerly been denominated case, on the common liability of an innkeeper by the rules of the common law, or, as known and spoken of in Eng-

land, by the custom of the realm, for the loss of money which the plaintiff brought with him to the inn of the defendants. As such action, it presented no new or unsettled question — no point not easily resolved by reference to the authorities. The nature and extent of such liability are so well known that it is unnecessary to refer to them here, except in general terms. The innkeeper must answer in damages for the loss or injury of all goods, money and baggage of his guest, brought within his inn, and delivered into his charge and custody, according to the usage of travelers and innkeepers. It is not necessary, however, that the goods be expressly put into the charge of the innkeeper, or that his custody be exclusive, in order that he may be held responsible. The guest may retain personal custody of his goods within the inn, as of his trunk and its contents, his wearing apparel and other articles, in his room, his money and his watch in his pockets, and any jewelry or valuables carried or worn about his person, without discharging the innkeeper from responsibility. Goods, money and baggage so in the custody of the guest are likewise considered in the custody of the innkeeper, and subject to that uncommon care which he is bound to exercise respecting the effects of his guest.

Nor is the guest required to prove that his goods have been lost by the negligence of the innkeeper. Proof of the loss by the guest while at the inn is presumptive evidence of negligence on the part of the innkeeper or of his domestics. It is the duty of the innkeeper to provide honest servants and keep honest inmates, and to exercise exact care and vigilance over all persons who may come into his house, whether as guests or otherwise. By the common law he is responsible not only for the acts of his servants and domestics, but also for the acts of other guests. The reason for this stringent rule has been well stated by Sir William Jones. He says: " Rigorous as this rule may seem, and hard as it may actually be in one or two particular instances, it is founded on the great principle of public utility, to which all private considerations ought to yield.

For travelers, who must be numerous in a rich and commercial country, are obliged to rely almost implicitly on the good faith of innkeepers, whose education and morals are none of the best, and who might have frequent opportunities of associating with ruffians and pilferers, while the injured guest would seldom or never obtain legal proof of such combinations, or even of their negligence, if no actual fraud had been committed by them." Jones on Bailments, 95, 96.

The circumstances which excuse the innkeeper and relieve him from liability, are few in number, and likewise well understood. He may show that the loss was attributable to the personal negligence of the guest himself, or occasioned by inevitable casualty, or by superior force. He is not liable if it was caused by the act of God or the public enemy, or by the conduct of the guest, or by the acts or misconduct of his servants, or of the companions whom he brought with him. Beyond these the common law admits no excuse and affords no immunity to the innkeeper for the loss of goods happening to a guest within his inn, so long as the guest is a sojourner merely, abiding in and using and occupying the inn as a place of rest and for lodging and entertainment. An innkeeper is not bound by law to find show rooms or sales rooms for his guests in which to expose or sell their goods, but only suitable lodging rooms and lodging; and if the guests use their rooms for the purposes of such exposition or sale, this also constitutes an exception to the general liability of the innkeeper, and he will not be held responsible for the loss of such goods.

With these general principles in view, the questions presented in this case are not difficult of determination. The exceptions taken upon the trial were but two in number, and arose upon the refusal of the court to grant two requests to instruct, made by the defendants.

The first request related to the character of the plaintiff as a person receiving lodging and refreshment at the inn — whether he was a guest or not. The plaintiff was not a neighbor or

friend of the defendants coming to their inn, but a traveler. He was a passsenger or wayfaring man, who resided at a distant place, and who sought the public house kept by the defendants for temporary lodging and entertainment. Of these facts the proofs leave no doubt. He came to the house, and asked one of the defendants if they took boarders, and was answered, "Yes." He enquired the price of board by the week, and was informed, and was thereupon received into the house. His intention was to remain only for three or four days, but of that no communication was made to the defendants. Upon these facts the defendants requested the court to charge the jury, "That if the jury shall find, from the evidence, that the plaintiff was stopping at the hotel of the defendants, at the time of the loss of the money and property in question, under an agreement to board by the week, he was not a guest but a boarder, and the common law liability of an innkeeper for the property of his guest does not apply."

The point upon which the request turned was, that if the plaintiff entered the hotel under an agreement to board by the week, he was but a boarder and not a guest, and therefore the liability of an innkeeper did not attach. The court was asked to hold as matter of law, that agreeing for board by the week deprived the plaintiff of the character of a guest, and transformed him into a boarder. As matter of law, the court could not say so; or if it had, it would have been error. It is well settled that if a person goes to an inn as a wayfarer and a traveler, and the innkeeper receives him into his inn as such, he becomes the innkeeper's guest, and the relation of landlord and guest, with all its rights and liabilities, is instantly established between them. Neither the length of time that a man remains at an inn, nor any agreement he may make as to the price of board per day or per week, deprives him of his character as a traveler and a guest, provided he retains his *status* as a traveler in other respects. *Berkshire Woolen Co. v. Proctor*, 7 Cush., 417; *Hall v. Pike*, 100 Mass., 495; *Pinkerton v. Woodward*, 33

Cal., 557; *Norcross v. Norcross*, 53 Me., 163. It was a question of fact to be found by the jury upon all the evidence, and not one of law to be determined by the court, whether the plaintiff was a boarder and not a guest.

Had a proper request been prepared, directing the attention of the jury to the evidence in that particular, and informing them that it was for them to decide whether under the circumstances the plaintiff was received by the defendants as a guest and the relation of landlord and guest existed between them, no doubt such request would have been granted. Had the court refused a request of that kind, it would doubtless have been error.

The other request which was denied, was in these words: " That if the jury shall find, from the evidence, that the money and property in question was upon the person and under the exclusive control of the plaintiff at the time of the loss, the defendants are not liable."

It will be observed from the statement of general principles above made, that this request was incorrect. Possession of money upon the person of the guest does not constitute such exclusive control and custody on his part as will exonerate the innkeeper, unless under certain peculiar circumstances. It has been held at common law, that if, after notice from the innkeeper that a safe was provided for money, and that he would not be responsible for its loss unless deposited therein, the traveler retains his money in his own possession or in his room, and it is stolen or lost, the innkeeper will not be liable. The decision was put upon the ground of negligence in the guest. The retention of his money by the plaintiff upon his own person did not excuse the defendants, unless the negligence or misconduct of the plaintiff induced the loss.

It is likewise contended that the evidence disclosed such gross negligence on the part of the plaintiff that he ought not to have recovered, and that the verdict was against evidence. It was formerly supposed that only gross negligence on the part

of the guest would prevent a recovery, but it is now settled that a want of ordinary care contributing to the loss will have that effect.    Some strong facts and circumstances tending to prove negligence on the part of the plaintiff were shown ; but the question was fairly submitted to the jury, and they have found in his favor.    The effort was to show that he was intoxicated when he retired to his room, about eleven o'clock in the day, and that he was negligent in not finding the key in his door, and in not locking the door.    In *Calye's Case*, 8 Coke, 32, 1 Smith's Leading Cases [*194], it was resolved, as a proposition of law, to be "no excuse for the innkeeper that he delivered the guest the key of the chamber in which he lodged, and that he left the chamber door open."    This would hardly be accepted or held as matter of law now-a-days, and indeed is not, but is a question of fact for the jury.    It is for the jury to say whether such conduct on the part of the guest constitutes negligence or not, under the circumstances.    Negligence in cases of this nature, as in all others, is one of fact for the jury, unless the evidence is too plain and positive to admit of doubt or controversy, when the court will be justified in taking the case into its own hands and directing a verdict.    We cannot say, in view of the very stringent liability of innkeepers, and of the authorities, that the court would have been justified in doing so in this case, and hence can not disturb the verdict as being against the evidence.    If drunk, the plaintiff might still have claimed the protection of his host, as did Falstaff, when he fell asleep " behind the arras," and might say with him :    " Shall I not take mine ease in mine inn, but I shall have my pocket picked ? " which seems to be a further proof, not noticed by the advocates of that theory, that Shakespeare was a lawyer, and therefore that Bacon wrote Shakespeare.

A third request refused related to the liability of the defendants as partners, which, if admitted to have been correct in law, has now become immaterial, since the jury have found that the

partnership existed at the time the money was lost, and was not entered into afterwards, as assumed in the request.

*By the Court.* — Judgment affirmed.