# CHARLESTON.

## CUNNINGHAM *v.* BUCKY.

42 671
43 815

Submitted September 9, 1896—Decided December 9, 1896.

1. INNKEEPERS' LIABILITY—THEFTS BY INN SERVANTS.

An inn or hotel keeper is a guarantor for the good conduct of all members of his household, including those engaged in his service, and is liable for thefts committed by them of the property of his guests while asleep in rooms assigned them.

2. INNKEEPERS' LIABILITY—GUESTS—SERVANTS.

The fact that the guest is intoxicated or his door is unlocked will not destroy the landlord's liability for the acts of his servants.

C. H. SCOTT and L. D. STRADER for plaintiff in error.

E. D. TALBOTT for defendant in error, cited 35 Am. St. Rep. 199; 26 Am. St. Rep. 325, 329; 7 Cush. 417; 26 W. N. C. 51; 36 Minn. 334; 33 N. W. Rep. 114; 1 Add. Torts, 608; 1 Smith, Lead. Cas. (6th Ed.) 105; 11 Am. & Eng. Enc. Law, 32, 52, 53, notes; 52 Ark. 364; 83 Ga. 696; 47 Ark. 126; 28 N. E. Rep. 430; 2 O. B. 11.

DENT, JUDGE:

W. A. Cunningham obtained a judgment for two hundred and fifty four dollars and forty cents on the 18th day of May, 1895, in the Circuit Court of Randolph county, against Alpheus Bucky, who obtained a writ of error therefrom to this Court.

The errors assigned are for the refusal of the court to give certain instructions for the defendant, and the giving of certain instructions for the plaintiff, and the overruling of the motion for a new trial.

The cause of the action is the loss of two hundred and forty

dollars on the part of plaintiff, by theft, while stopping at defendants hotel, in the town of Beverly, Randolph county. The evidence is all certified. Hence it becomes the duty of the Court, in accordance with its former rulings, to first determine whether the verdict of the jury is sustained by a plain preponderance thereof, and, if so, to disregard all errors of law, if any were committed, which do not in a material degree tend to produce the result reached, *Bank* v. *Napier*, 41 W. Va. 481 (23 S. E. 800); for if the Court finds, on an examination of the evidence, that the conclusion reached is sustained by a decided or plain preponderance thereof, and is in accordance with law, although errors may have been committed in the giving of instructions or otherwise, the judgment will not be reversed. A reversal in such case would be abortive and injurious to both parties, as prolonging useless litigation. A result having been reached plainly in accord with the evidence and the law can not be overthrown by the rulings of the Court, however erroneous, for such errors would not be to the prejudice of the party complaining. *Plate* v. *Durst*, 42 W. Va. 63 (24 S. E. 580.)

The circumstances of the case are as follows, to wit: Plaintiff went to the defendant's hotel, called the "Valley Hotel," to stop for a few days at the most. His home was in Virginia. He had an arrangement with defendant to board the mail carrier at reduced rates, and, when stopping there, was accorded these rates himself. On this occasion, he had received payment of a draft; was drinking, and slightly intoxicated; exhibited his money freely; was arrested, fined, and paid the same. Mrs. Bucky, during the day, asked him to let her take charge of his money. This he declined to do, saying he was able to take care of his own money. At night he was assigned to a room which had two outside doors, both of which were locked and bolted. Another door opened in another small room, which communicated with the office through another door. There was no way of fastening the door between the rooms on plaintiff's side, but the door of the outer room, which communicated with the office, had a lock on, with a key in it. The son of the proprietor says he gave the key of this

door to plaintiff, but plaintiff says that he simply told him that the door between the rooms could not be fastened, but that he would see that the office door was properly fastened, and relying on this statement, he (plaintiff) paid no more attention to the matter. He examined his pocket-book, to see that his money was in it, then placed it down in his coat pocket, and hung his coat on the bedpost, and retired for the night. On awakening in the morning, he noticed the pocketbook had been disturbed, and, on examining it, found his money gone. He got up, went out, found the colored porter, and acquainted Mr. Bucky with his loss. The money could not be found, and has never been restored, and amounted to two hundred and forty dollars.

W. H. Franklin, a colored servant, employed about the hotel, testified, in substance, as follows, to wit: That he got up as usual, the morning of the theft, about daylight, and was busy about his customary duties sweeping out the office and hall, when Mrs. Bucky, wife of the defendant, came into the office where he was sweeping, and told him to stop a while, and stand still, and then she went in through the doors into Mr. Cunningham's room, and in a short time returned, with a pocketbook in her hand, and went around behind the counter, and says, "Now, Franklin, never say anything about what you see me do." She then opened the pocketbook, and took several bills out of it, and then handed the pocketbook to him, and told him to take it back, and put it in Mr. Cunningham's coat pocket. He slipped in, and did as she told him. Mr. Cunningham was asleep. She then called him around to a side door, and told him not to say anything about what he saw her do, and gave him two five-dollar notes, a two-dollar note, and a one-dollar note. That afterwards he went on with his sweeping, until Mr. Cunningham came out, and told him to call Mr. Bucky. After a few days, hearing that he was going to be arrested, he left, and went to Barbour county, where he was arrested, and brought back, and lodged in jail. As to this witness' implication in this theft there is no contradiction. That he knows how and when and by whom the money was stolen is plainly evident. That he was in Mr. Cunningham's room, and had Mr. Cunning-

85

ham's pocketbook in his hands, can not be denied. The only evidence against Mrs. Bucky is the very peculiar statements of a self confessed accomplice, who is uncorroborated, but contradicted by Mr. and Mrs. Bucky, and by his own preposterous story, for it is beyond belief that Mrs. Bucky would make up her mind to rob the plaintiff in the manner narrated, and take a colored man into her confidence, with whom she had only been acquainted five weeks. When she defended his good name, she was warming a snake in her bosom. But its bite, on account of its fangless condition, was not posionous. But Mr. Bucky can hardly escape so well. It is plainly evident who committed this theft; and the sole question is, on whom does the law fix the loss? We have no statute on the subject, and must be governed by the common law.

By the common-law of England, an innkeeper is responsible for the loss of the goods or money of a traveler, who is his guest whenever the loss is not occasioned by the fault of the traveler himself, the act of God, or the queen's enemies. Saund. Neg. 212. "An innkeeper, like a common carrier, is an insurer of the goods of his guests, and he can only limit his liability by express agreement or notice." 2 Kent, Comm. 594. "The common-law, as is well known, upon grounds of public policy, for the protection of travelers, imposes an extraordinary liability upon an innkeeper for the goods of his guest, though they have been lost without his fault." 11 Am. & Eng. Enc. Law. "If an innkeeper fails to provide honest servants and honest inmates, according to the confidence reposed in him by the public, his negligence in that respect is highly culpable, and he ought to answer civilly for their acts, even if they should rob the guests who sleep in his chambers." Jones, Bailm. 94-96. "Generally, and perhaps universally, he has been held to an absolute responsibility for all thefts from within or unexplained, whether committed by guests, servants, or strangers." "The general principle seems to be that the innkeeper guarantees the good conduct of all persons whom he admits under his roof, provided his guests are themselves guilty of no negligence to forfeit the guaranty." *Cutler* v. *Bonney*, 30 Mich. 259. "Proof of the loss by the guest

while at the inn is presumptive evidence of negligence on the part of the innkeeper or of his domestics. It is the duty of the innkeeper to provide honest servants, and keep honest inmates, and to exercise exact care and vigilance over all persons who may come into his house, whether as guests or otherwise. By the common-law, he is responsible, not only for the acts of his servants and domestics, but also for the acts of other guests." *Jalie* v. *Cardinal*, 35 Wis. 118. "Neither the length of time that a man remains at an inn, nor any agreement he may make as to the price of board per day or week, deprives a person of his character as a traveler and guest if he retains his status as a traveler in other respects." *Id.*

There is no question that the plaintiff was a guest at the defendant's hotel, and that while there he was robbed in his room while asleep, from within the defendant's family, including his servants. That he had been drinking, was careless with his money, and trusted in the honesty of defendant's household, and refused the services of Mrs. Bucky as to the care of his money, will not excuse the defendant from the dishonesty of those admitted to his employment. It was his duty to surround himself with honest servants, for the protection of the public; and he can not excuse himself from liability by showing that the servant was a stranger, and hired on recommendation as to good character. He should have exercised care and vigilance over wandering servants admitted to his house, and see that they did not have the opportunity to steal from his guests. As Judge Dixon says in *Jalie* v. *Cardinal*, above cited: "If drunk, the plaintiff might still have claimed the protection of his host, as did Falstaff when he fell asleep behind the arras,' and might say with him: 'Shall I not take mine ease in mine inn, but I shall have my pocket picked?'" The plaintiff was taking his ease in his inn under the protecting *ægis* of his host when he had his pocket picked, evidently by a member of the defendant's household, for whose good conduct he was guarantor, and for whose malfeasance he was liable to his guests. Such being the plain conclusion of the law, any error that the circuit court may have committed in the giving or refusing instructions was not pre-

judicial to the defendant, and it becomes unnecessary to consider them.

From an examination of the instructions, it is apparent that the defendant received greater consideration therein than the law justifies. For instance, the court gave the following instruction in his behalf: "Instruction No. 1. The court instructs the jury that, although they may believe that the plaintiff was robbed in the hotel of the defendant while he was abiding therein as a guest, still, if the jury further believe that the negligence of the plaintiff in displaying his pocketbook or money contributed to such robbery in a material way, then the jury shall find for the defendant, unless they further believe from the evidence that the wife of the defendant stole the said money." An innkeeper is not only responsible for the misconduct of his wife, but also of all those connected with the hotel service; and no display of a guest's money will relieve the landlord from the dishonesty of his servant in stealing it, for, as heretofore shown, he is a guarantor of his honesty.

The right of the plaintiff to release part of the verdict is settled in the case of *Railroad Co. v. Blake*, 38 W. Va. 718 (18 S. E. 957).

For want of prejudicial error, the judgment is affirmed.