Valette R. Rockhill, Defendant in Error, v. Congress Hotel Company, Plaintiff in Error. .

### Gen. No. 13,897.

1. INNKEEPERS—*when liability arises under section 2 of act.* If a safe is provided by an innkeeper (the existence of the safe was assumed for the purpose of this decision) which is not availed of by the guest for the depositing of jewelry, a liability none the less arises for the loss of such jewelry if the same results (as was held in this case) from the negligence of an employe or servant.

2. INNKEEPERS—*when liability for loss of jewelry arises.* An innkeeper is liable for the loss of jewelry contained in a valise which is delivered to a porter upon the eve of the departure of the guest, which porter has been sent by the clerk, at the request of the guest, to receive such baggage.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed June 11, 1908.

**Statement by the Court.** It is sought by this writ of error to procure the reversal of a judgment recovered by defendant in error against plaintiff in error for the sum of $585 and costs of suit. The cause was tried by the court, without a jury, on a stipulation of facts by the parties. The facts are as follows: The defendant, the Congress Hotel Company, is an Illinois corporation, its purpose being the conducting of a hotel. For more than a year prior to April 8, 1907, it had been conducting a hotel, known as the Auditorium Annex, in the city of Chicago. April 8, 1907, Mrs. Valette R. Rockhill, the plaintiff, whose residence was in Fort

Wayne in the State of Indiana, came to Chicago, and she, her husband, her mother, her sister and another lady, all from Fort Wayne, and forming one party, became guests at the Auditorium Annex, and rooms were assigned to them. Plaintiff and her husband occupied one room in a suite. On the morning of April 10, 1907, plaintiff's husband left the hotel. April 11, 1907, plaintiff and her party desired to return to their home in Fort Wayne. The party had with them at the hotel two trunks, two hand-bags, a dress suit case and a wooden box. One of the hand-bags belonged to the plaintiff and was of the value of $20, and she had packed in it one silver hand mirror, of the value of $12; one jewel case of the value of $6; one Peridot cross of the value of $45; one locket and chain of the value of $23; two rings of the value of $90 each, one of them being set with three turquoises and surrounded by diamonds, and the other with three opals, surrounded by diamonds; one fresh water pearl ring with matrix of the value of $15, and another fresh water pearl ring of the value of $10; one barette for hair, being of tortoise shell, with gold and pearls, of the value of $17; one etched silver eye-glass case of the value of $18; one pair of eye-glasses of the value of $10; one gold coin purse of the value of $6, which contained $7 in money; one necklace set with brilliants and *lapis lazuli*, of the value of $15; one gold brooch, with small diamonds and rubies, of the value of $35; one brooch of lotus flower in gold, with diamonds in center, of the value of $35; one manicure set of the value of $4; one silver button-hook of the value of $2, and a string of coral beads of the value of $125, making a total value of $585.

Plaintiff then notified a clerk of the defendant that she intended to leave the hotel that day, and to send to her room for her baggage, and she remained in her room till a porter of defendant came for the baggage, which was about nine o'clock in the morning, and she then told the porter to take out the two trunks, the

dress suit case, the wooden box and the two hand-bags, all of which were taken out of the room by the defendant's porter, in plaintiff's presence; and plaintiff requested the porter to take the checks for the same to the head porter's desk, and said that she would go there and get them. Subsequently the plaintiff and two others of her party went to the head porter's desk for the checks, and the plaintiff was given one check less than the number of pieces of baggage which she had delivered to the porter in her room, and she requested the head porter to give her the other check, and was informed by him that those were the only checks he had. Plaintiff then inspected the several pieces of baggage and found that her own valise, which contained the above mentioned property, was missing, and after considerable search for it, the porter stated that there was a bag missing, and plaintiff, on going to the clerk at the desk of the hotel, was told that diligent search would be made for it, and that when found it would be forwarded to her at Fort Wayne, Indiana. Plaintiff has not seen the valise, or any of its contents, since it was delivered to the hotel porter at her room on the morning of April 11, 1907. On plaintiff's return home, April 11, 1907, she informed her husband, Mr. Howell C. Rockhill, of her loss, and he telephoned to the defendant, inquiring whether the lost piece of baggage had been located, and was told that it had not, and April 13, 1907, the defendant telephoned to him that it was exhausting every effort to locate the grip, and would write him soon, since which time Mr. Rockhill has received no communication from the defendant. Plaintiff made demand on defendant to be reimbursed for her loss, and the demand was refused. The stipulation contains the following:

"It is further stipulated that The Congress Hotel Company, at the time of the alleged loss of plaintiff's property, as mentioned in the stipulation herein, had complied fully with all the laws of the State of Illinois, regarding the posting of notices under the so-called

'Inn-Keepers Act' of said State of Illinois, and it is further stipulated, that the plaintiff herein at no time gave said hotel company, directly or indirectly, any notice whatsoever that the bag or traveling satchel mentioned in the stipulation herein contained any of the articles shown by said stipulation, and gave to said hotel company no notice, directly or indirectly, of the contents or value of said bag, as set forth in said stipulation.''

The defendant demurred to the evidence and the court overruled the demurrer, and thereupon defendant moved the court to render judgment for $66 against the defendant, the same being the value of certain of the articles above mentioned, which motion the court refused, and the court, after passing on certain propositions tendered as propositions of law, found for the plaintiff, assessed her damages at $585, overruled a motion for a new trial and rendered judgment on the finding.

GOODRICH, VINCENT & BRADLEY, for plaintiff in error; JOSEPH M. GRIFFEN, of counsel.

W. S. OPPENHEIM, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Counsel for plaintiff in error rely on the act of 1861, entitled ''An Act for the protection of inn-keepers,'' which is as follows:

''Sec. 1.  Be it enacted by the People of the State of Illinois, represented in the General Assembly, That hereafter every landlord or keeper of a public inn or hotel in this state, who shall constantly have in his inn or hotel an iron safe, in good order, and suitable for the safe custody of money, jewelry and other valuable articles, belonging to his guests or customers, shall keep posted up conspicuously, in the office, also at the inside of every entrance door of every public, sleeping, bar, reading, sitting and parlor room of his inn or hotel, notices to his guests and customers that they must leave their money, jewelry or other valuables

with the landlord, his agent or clerk, for safe keeping, that he may make safe deposit of the same in the place provided for that purpose.

"Sec. 2. That such landlord, hotel or inn keeper as shall comply with the requirements of the first section of this act, shall not be liable for any money, jewelry, or other valuables, of gold, silver or rare and precious stones, that may be lost, if the same is not delivered to said landlord, hotel or inn keeper, his agent or clerk, for deposit, unless such loss shall occur by the hand or through the negligence of the landlord, or by a clerk or servant employed by him in such hotel or inn: *Provided,* that nothing herein contained shall apply to such amount of money and valuables as is usual, common and prudent for any such guest to retain in his room or about his person." Hurd's Rev. Stats. 1905, p. 1154.

It may be noted here that it does not appear from the stipulation of facts, or otherwise, that the plaintiff in error had in its hotel any iron safe, as provided in section 1 of the act. However, no question as to this is raised by counsel for defendant in error, and we will, therefore, consider the case on the presumption that plaintiff in error had such safe in its hotel. Counsel for plaintiff in error comment on this language in section 2 of the act,—"unless such loss shall occur by the hand or through the negligence of the landlord, or by a clerk or servant employed by him in such hotel or inn"—and say: "It can hardly be contended that it was intended by this section that the guest could entrust his jewelry and valuables to any and all employes, from bootblack or porter up, without notice to anyone in authority, with the expectation and right of holding the unknowing inn-keeper absolutely responsible for the safety of all such property." This language is inapplicable to the facts of the present case. If the defendant in error had deposited the articles in question in the hotel company's safe, kept for that and like purposes, she certainly would have had the right, and it would have been necessary to withdraw them from the safe and pack them in her valise or bag on

the day she intended leaving the hotel. She did pack
them in her valise or bag on the morning of that day,
and did not deliver the package in which they were
to anyone, "without notice to anyone in authority."
On the contrary, she sent word to the clerk of the
hotel "that she intended to leave the hotel that day,
and to send up to her room for the baggage," and a
porter was sent up accordingly, and she delivered the
baggage to the porter who was sent up for it, and the
baggage was lost, whether while in the hands of the
porter to whom she delivered it, by the implied author-
ity of plaintiff in error, or at the head porter's office,
does not appear. The loss was, clearly, as we think,
within the exception to the innkeeper's non-liability in
section 2 of the act, commencing with the word "un-
less." It could not have occurred otherwise than by
the negligence of the porter to whom it was delivered
by defendant in error, and who was sent to take it
out of the room of the defendant in error, or by the
negligence of the head porter; and the clerk, the porter
to whom defendant in error delivered the baggage, and
the head porter were all servants of plaintiff in error.

"An inn or hotel keeper is a guarantor for the good
conduct of his household, including those engaged in
his service." Johnson v. Richardson, 17 Ill. 302, 305;
Cunningham v. Bucky, 42 W. Va. 671.

Negligence cannot be predicated on the act of de-
fendant in error in delivering the baggage to the hotel
company's servant, sent by the hotel company's clerk
to receive it.

In Bendetson v. French, 46 N. Y. 266, French was
the proprietor of a hotel in New York city, in which
Bendetson was a guest from October 4th till and in-
cluding October 8, 1861. On the morning of October
8th he presented to the clerk at the hotel office a box
sixteen inches long, ten inches wide and about seven
inches high, wrapped in oil cloth and tied with a cord,
which contained watches, jewelry and other valuables,
and requested the clerk to place the box in the safe

for valuables, without notifying the clerk of its contents, when the clerk told him to take the box to his room, saying it would be just as safe there. The plaintiff took the box to his room and put it in his trunk, which he locked, locked the room, gave the key of the room to the clerk, and left the hotel. He returned to the hotel at one o'clock p. m., went to his room, packed his trunk, in which the box then was and safe, and locked the door of his room and gave the key of the room to the clerk, telling him that he intended to leave for Syracuse, where he lived, on the first train. He then left the hotel, but returned in a short time and paid his bill and inquired for his trunk, and on being told that it had not been brought down, he went with a porter to his room for his trunk, and found that the room had been entered, the trunk broken open and the watches and jewelry stolen. The court held that there was a neglect to deposit, the clerk not having been notified of the contents of the box, but said: ''The statute is very broad in its language, that 'if such guest shall neglect to deposit, etc., the proprietor shall not be liable for any loss of such money, etc., sustained by such guest, by theft or otherwise.' This was evidently aimed at losses that should occur by such neglect. It could have no reference to losses at the inn occurring before the guest had the opportunity to make such deposit, or after he had packed his trunk, locked his room, and given notice for immediate departure, etc., delivered up the key of his room to the clerk, to have his trunk brought down. (Stanton v. Leland, 4 E. D. Smith 88.) Had the valuables been in the custody of the clerk in the safe, they must have been delivered to the guest to be packed prior to his departure, and if lost thereafter without the fault of the guest, the landlord would be liable.'' Judgment rendered by the trial court for the plaintiff was affirmed. It does not appear from the opinion that the New York statute contained an exception to the innkeeper's non-liability,

as does our statute. The contrary is indicated by the opinion.

In Labold v. Southern Hotel Co., 54 Mo. App. 567, it is held that the hotel company was liable to a guest for the loss of an overcoat which the guest had left in the coat room, in charge of a servant of the company, when he went into the dining room. See, also, Williams v. Moore, 69 Ill. App. 618. We have examined the authorities cited by counsel for plaintiff in error, and do not think them applicable to the facts in this case.

The judgment will be affirmed.

*Affirmed.*