GILL C. SHIFFLETTE, *et al.*

*v.*

MARY E. LILLY, *et al.*

(CC 723)

Submitted April 23, 1947. Decided June 10, 1947.

J. *Campbell Palmer, III,* and J. *Henry Francis, Jr.,* for plaintiffs.

A. A. *Lilly* and R. G. *Lilly,* for defendants.

Fox, President:

The single question presented on this certification from the Circuit Court of Kanawha County is the nature and extent of the liability of an innkeeper, designated in our statute as "hotel keeper," for loss of goods and chattels taken and carried away from the room of a guest; and, specifically, to what extent, if any, Code, 16-6-22, changes the common law liability for such loss.

From the declaration in trespass on the case, filed herein at May rules, 1946, it appears that defendants kept a hotel or inn in the City of Charleston, and that on or about the 10th day of September, 1945, plaintiffs were accepted as guests, and assigned to a room in such inn or hotel. Plaintiffs took to their said room certain described wearing apparel of a value alleged to be in excess of five hundred dollars, which was afterwards, and while plaintiffs continued as such guests, taken and carried away by some person or persons to the plaintiffs unknown, and then was and still is wholly lost to them.

The declaration is in two counts, and while only one of said counts is now under attack, it is considered advisable to refer to the declaration as a whole, in order to illustrate fully the situation here presented. The first count is based on the common law liability of an innkeeper, and does nothing more than allege the relation of innkeeper and guest, the duty of the innkeeper "to insure and keep safely without diminution or loss, the said goods and chattels of said plaintiffs," and the loss of said goods and chattels, with a description of the character and value thereof. The second count alleges the same facts as those contained in the first count, except that there is added to the averment of the duty of an innkeeper the further allegation that said duty required him "to exercise due care and diligence in providing honest servants and employees and to take every reasonable precaution to protect said goods and chattels of the said plaintiffs," and the violation of said alleged duties.

The defendants interposed their demurrer to the first count in the said declaration, and the grounds therefor are alleged to be:

(1) The plaintiffs erroneously set out and charge the defendants with the common law liability of innkeeper, whereas the liability, if any, of defendants is governed by statute,—Code, 16-6-22; (2) the plaintiffs erroneously charge a breach by defendants of the common law liability of innkeepers; (3) the alleged damages sustained by plaintiffs are allegedly based on the common law liability of innkeepers, whereas the liability, if any, of the defendants is governed by statute, Code, 16-6-22.

The record does not disclose just when the demurrer was filed, but a hearing thereon was had on December 9, 1946. The trial court sustained said demurrer, and, upon its own motion, certified its ruling to this Court. The questions certified are:

"(1) Has the common law rule that an innkeeper is liable as an insurer for loss of the property of his guest been abrogated and removed as the law in this State by the enactment of Section 22, Article 6, Chapter 16, Code of 1943; (2) under Section 22, Article 6, Chapter 16, Code of 1943, properly construed, is the negligence of the hotel keeper an essential element in an action brought by the hotel keeper's guest ·for the recovery of damages resulting from the loss of wearing apparel, baggage, and other property, excepting valuables, while a guest at the hotel; (3) where a loss of wearing apparel, baggage, or other property of the guest, excepting valuables, is occasioned by the negligence of the hotel keeper, does Section 22, Article 6, Chapter 16, Code of 1943, properly construed, limit the amount of damages which the guest may recover for such negligence to Two Hundred and Fifty Dollars ($250.00), where the loss takes place from the room or rooms occupied by the guest; and (4) if Question No. 3 is answered in the affirmative, is such statute constitutional?"

It seems to be conceded that prior to the enactment of

Chapter 48, Acts of the Legislature, 1899, the liability of an innkeeper for the loss of property of a guest, while the relationship of innkeeper and guest continued, was, in effect, absolute. This strict rule of liability had its origin at a very early date, there being decisions in England supporting the doctrine as early as 1368. Some of the reasons advanced for the doctrine are interesting. In *Aria* v. *Bridge House Hotel,* 16 B. R. C. 538, decided in 1927, it is stated: "The law has been framed for hundreds of years that the innkeeper is liable for the safe custody of goods which come into his hands on his premises which are goods belonging to the guest and the reason of the rule is obvious. In the old days when inns were remote from the towns, and when highwaymen were rampant, it was not an uncommon thing for highwaymen and innkeepers to be in league together, and it was realized at a very early stage in our existence that the only safe thing for the general public was that the innkeeper should be responsible for the safety of his guest and his guest's goods. That law still remains. There are exceptions which have been made, notably by the Innkeepers Act 1863." Probably most of the original reasons for the rule no longer exist; but, in the absence of statute requiring departure therefrom, it is still the law. For a further discussion of the common law doctrine see 2 Kent's Commentaries, 592-594; 2 Street's Foundations of Legal Liability, 294; Beale on Innkeepers and Hotels, 126.

On this foundation of ancient authority, the question was presented to this Court in the case of *Cunningham* v. *Bucky,* 42 W. Va. 671, 26 S. E. 442. In that case, decided in 1896, an intoxicated guest was robbed of a considerable sum of money, probably by a porter, and possibly by a member of the innkeeper's family. The guest had taken no precaution to protect himself against loss, and had made his possession of money conspicuous. Notwithstanding this, the owner of the hotel was held liable for the loss, and it was stated: "An inn or hotel keeper is a guarantor for the good conduct of all members of his household, including those engaged in his service, and

is liable for thefts committed by them of the property of his guests while asleep in rooms assigned to them." And "The fact that the guest is intoxicated or his door is unlocked will not destroy the landlord's liability for the acts of his servants." As sustaining this holding, see *Shultz* v. *Wall*, 19 A. 742 (Pa.); *Rains* v. *Maxwell House Co.*, 79 S. W. 114 (Tenn.); *Burbank* v. *Chapin*, 2 N. E. 934 (Mass.); *Abercrombie* v. *Edwards*, 161 P. 1084 (Okla.); *Featherstone* v. *Dessert*, 22 P. 2d 1050 (Wash.); *Stoll* v. *Almon C. Judd Co.*, 138 A. 479 (Conn.); 43 C. J. S. 1153-4; 28 Am. Jur. 585. There is some conflict of authorities as to whether the landlord's liability rests upon negligence or upon the ground of public policy. In 28 Am. Jur. 587, the following discussion on the question appears:

> "The strict rule of liability for the loss of or. injury to the goods of guests or patrons had its origin at any early period, and is generally justified on the ground of public policy. It is said to have been imposed for several reasons, namely, because it was a good policy to encourage convenient and secure intercourse between different parts of the kingdom; because travelers and strangers must of necessity trust to and confide in the honesty and vigilance of the innkeeper and those in his employ; and because of the innkeeper's opportunity and temptation to collude with evil-disposed persons and afford facilities in purloining the goods of those in his house. Furthermore, of the two, the innkeeper is better able to protect himself against loss, while the guest is practically helpless to ascertain or enforce his rights. It is no more a hardship for an innkeeper than for his guests to sustain a loss, neither party being at fault, especially since the former undertakes a trade with a full knowledge of his liabilities, for he may so regulate his charges as to indemnify himself. Moreover, he has special privileges.

> "In modern times, the common-law policy has been assailed as no longer of any force, but the courts have refused to be moved by this argument and have said that admitting that modern innkeepers are generally trustworthy and men of

> integrity, yet it does not follow that the same favorable state of things would continue under a more lax policy. If a door is opened to fraudulent and dishonest practices, it may be expected that they will soon creep in and prevail, and to prevent new evils from springing up is no less important than to suppress those which already prevail."

In this connection it is also well to note that there seems to be some distinction between the liability of an innkeeper and that of a mere bailee for hire; a bailee, as a general rule, being held only to ordinary care. That question, however, does not arise in this case, because quite clearly the liability of defendants, if any, is as innkeepers.

There was little statute law on the subject of hotels prior to 1891. Chapter 32 of the Code of 1868 makes provision for licensing hotels or taverns. Chapter 32 of the Code of 1884 provides for the licensing of hotels and taverns, and, by Section 5 of said chapter, makes certain requirements as to providing lodging and diet for travellers and their servants, with stableage and provender or pasture, as the season might require, for their horses. It also provided that if such hotel or tavern were in a city, town or village the applicant for a license might, if he desired to do so, dispense with the necessity of providing for horses. These provisions were continued in Chapter 32 of the Code of 1887. By Chapter 39, Acts of the Legislature, 1891, there was enacted a section directed to be incorporated as Section 32 of Chapter 145 of the then Code, which chapter included provisions for penalties for defrauding any hotel or boarding house,—all this in addition to the common law right of a hotel keeper to retain property and baggage of a guest until the bill for his accommodations had been paid. Then came Chapter 48 of the Acts of the Legislature, 1899, which enacted into law what is now, in substance and effect, Code, 16-6-22, and also reenacted and expanded Section 32 of Chapter 145 of the Code, enacted by Chapter 39 of the Acts of the

Legislature, 1891, which now appears, in substance, as Code, 61-3-40, under the head of "Crimes against Property." The changes in the statute of 1899 to make it conform to what is now Code, 16-6-22, are unimportant, and need not be pointed out in detail. The 1899 statute was, no doubt, enacted in view of the decision in the case of *Cunningham* v. *Bucky, supra,* and, with the changes now registered in our present code, reads as follows:

"It shall be the duty of the keepers of hotels and restaurants to exercise due care and diligence in providing honest servants and employees, and to take every reasonable precaution to protect the persons and property of their guests and boarders, but no such keeper of any hotel or restaurant shall be held liable in a greater sum than two hundred and fifty dollars for the loss of any wearing apparel, baggage or other property, not hereinafter mentioned, belonging to a guest or boarder, when such loss takes place from the room or rooms occupied by said guest or boarder; and no keeper of a hotel or restaurant shall be held liable for any loss on the part of any guest or boarder of jewelry, money or other valuables of like nature, Provided such keeper shall have posted in a conspicuous place in the room or rooms occupied by such guest or boarder, and in the hotel office and public reception room of such hotel or restaurant, a notice stating that jewelry, money and other valuables of like nature must be deposited in the office of such hotel (or restaurant), unless such loss shall take place from such office after such deposit."

The question presented is whether this statute should be construed to relieve the keeper of a hotel or restaurant from the common law liability of an innkeeper, or merely to limit the same. The question, clearly, is one of first impression in this State.

The statute in question, being in derogation of the common law, must be strictly construed, and should not be enlarged in its operation by a construction beyond what its terms express. *Harrison* v. *Leach,* 4 W. Va. 383; *Kellar* v. *James,* 63 W. Va. 139, 59 S. E. 939; *State* v. *Grymes,* 65

W. Va. 451, 64 S. E. 728; *Ash* v. *Lynch,* 72 W. Va. 238, 78
S. E. 365; *Snider* v. *Cochran,* 80 W. Va. 252, 92 S. E. 347;
*Landsman-Hirscheimer* v. *Radwan,* 90 W. Va. 590, 111
S. E. 507; *Peters* v. *Hajacos,* 91 W. Va. 88, 112 S. E. 233;
*McVey* v. *Telephone Co.,* 103 W. Va. 519, 138 S. E. 97. That
the common law did govern the liability of innkeepers
prior to the 1899 statute, cannot be questioned, inasmuch
as it was the common law long prior to the first English
settlement at Jamestown in 1607. In the Virginia Con-
vention of 1776, it was declared that "the common law
of England, and all statutes or acts of parliament made in
aid thereof, prior to the fourth year of James the First,
which are of a general nature and not local to that King-
dom, together with the several acts of the Colony then
in force, so far as the same may consist with the several
ordinances, declarations and resolutions of the General
Convention, shall be considered as in full force until the
the same shall be altered by the Legislative power of the
commonwealth." By Section 21, Article VIII of the Con-
stitution of this State, it is provided that: "Such parts
of the common law, and of the laws of this State as are in
force when this article goes into operation, and are not
repugnant thereto, shall be and continue the law of the
state until altered or repealed by the legislature." See
*Cunningham* v. *Dorsey,* 3 W. Va. 293; *Blaine* v. *C. & O.
Ry. Co.,* 9 W. Va. 252, 253. The common law is not to be
construed as altered or changed by statute, unless the
legislative intent to do so be plainly manifested. *Millhiser
Manufacturing Co.* v. *Gallego Mills Co.* (Va.), 44 S. E. 760;
*Norfolk & W. Ry. Co.* v. *Virginian Ry. Co.* (Va.), 66 S. E.
863. See also *Holt* v. *Otis Elevator Co.,* 78 W. Va. 785, 90
S. E. 333; *Shaw* v. *Monongahela Ry. Co.,* 100 W. Va. 368,
130 S. E. 461. Furthermore, the ancient rule of the com-
mon law, based upon reason and supposed necessity, as
indicated above, should not be cast aside unless the legis-
lative intent to do so is clearly manifest.

With this background, we come to the interpretation of
the statute, (Code, 16-6-22) as it is written. It is evident
that it was the purpose of the Legislature to modify and

soften the strict rule of liability of innkeepers to their guests in respect to their persons and property. We think it was the clear intent of the Legislature to provide an innkeeper a defense to the claim of a guest under certain conditions. The statute begins by defining the duty of the keeper of a hotel or restuarant, referred to in the old statute as "innkeepers," and requires him to exercise due care and diligence in providing honest servants and employees, and to take every reasonable precaution to protect the persons and property of his guests. Then it provides specially "but no such keeper of any hotel or restaurant shall be held liable in a greater sum than two hundred and fifty dollars for the loss of any wearing apparel, baggage or other property, not hereinafter mentioned, belonging to a guest or boarder, when such loss takes place from the room or rooms occupied by said guest or boarder." Up to this point the statute deals with the liability of the innkeeper to a guest for the loss of wearing apparel or baggage, obviously for the reason that a guest could not be expected to take any precaution with respect to such property other than to take it to the room assigned to him. Under the common law, a loss of this character of property, in such circumstances, would entail absolute liability on the innkeeper; but, under the statute, he could relieve himself of liability beyond two hundred fifty dollars, provided there had been exercised due care and diligence in providing honest servants and employees, and the other requirements of the statute had been met. The question is upon whom rests the burden of showing the fact of such due care and diligence.

The statute further changes the common law with respect to the liability of innkeepers for a class of property known as jewelry, money or other valuables of like nature. Here, the relief afforded the innkeeper is that if he shall post notices, prescribed by the statute in rooms occupied by all guests and in the hotel office and in its public reception room, to the effect that jewelry, money and other valuables must be deposited in the office of such hotel, he is relieved of all liability, unless such loss

of property occurs after it has been deposited in the hotel office. As to this provision, if the innkeeper would escape liability for loss, he must show that he has posted the notices required by statute. This was clearly held in *Nesben* v. *Jackson*, 89 W. Va. 470, 109 S. E. 489, decided after the 1899 enactment.

We are of the opinion that the same rule should be applied to the duty to exercise due care and diligence in providing honest servants and employees, and the other requirements of the statute. That, we think, always was the duty of an innkeeper, even though whether he exercises such due care was unimportant, inasmuch as his liability was, in effect, absolute in any event. In our opinion, it was not the intent of the Legislature in enacting the 1899 statute, to destroy the common law absolute liability, and to set up a new standard in respect to the duty of innkeepers, but merely to give relief to innkeepers in the way of providing means of relieving themselves of all liability in certain instances, and limiting liability in others, provided certain things, namely, the exercise of due care and diligence in providing honest servants, and the exercise of reasonable precaution to protect the person and property of guests should be established. To avail themselves of the benefits of the statute, with respect to limitation of liability as to wearing apparel, baggage and property other than jewelry, money and other valuables of like nature, the burden on the innkeeper to establish such due care and diligence still remains. We can see no reason why the burden should rest upon the innkeeper to establish the fact that the notices aforesaid had been posted, as to one class of property, and not impose a like burden as to other types of property, owned by the same guest.

If we were to adopt the theory of the defendants, an innkeeper could be guilty of gross neglect in the selection of servants, and utterly fail to exercise any character of care for the safety of the property of guests, such as is here involved, and yet escape all liability for the loss of wear-

ing apparel, baggage and the like beyond two hundred and fifty dollars. We cannot believe the Legislature intended such a result, or that the language employed requires us to place such a construction thereon.

Many states have, in one way and another, sought to temper the strict, if not absolute, liability rule of the common law. Generally speaking, where parties have complied with the statute, the limitations upon innkeepers' liability are interpreted to be limitations upon recovery from an innkeeper under his common law liability as an insurer. There are no such cases in West Virginia, but many from other jurisdictions incline us to believe that such a rule should be adopted in this State. In our judgment, the rule should be that, in case of a loss resulting from the negligence of the innkeeper, there should be recovery for the full value of the property lost to the same extent as if there had been no modification of the common law rule. We think the following cases from other jurisdictions, cited by counsel for plaintiffs, sustain this theory: *Shaine* v. *S. Jacobson, Inc.,* 201 N. Y. S. 781; *Davis* v. *Hotel Chelsea,* 186 N. Y. S. 75; *Hall* v. *Hotel Sherman Co.,* 236 Ill. App. 386; *Burton* v. *Drake Hotel Co.,* 2371 Ill. App. 76; *Busley* v. *Hotel Wisconsin Realty Co.,* 164 N. W. 826 (Wis.); *Widen* v. *Warren Hotel Co.,* 159 N. E. 456 (Mass.); *Gillette* v. *Waldorf Hotel Co.,* 241 P. 14 (Wash.); *Shiman Bros. & Co.* v. *Nebr. Nat. Hotel Co.,* 9 N. W. 2d 807 (Nebr.); and *Rawn* v. *Fourteen E. Sixtieth St. Hotel Corp.,* 213 N. Y. S. 333.

Counsel for defendants suggest that such a rule would impose great hardship upon an innkeeper. It is difficult to provide a rule which, in its application, will be fair to both the innkeeper and guest. The innkeeper, however, occupies a position in which, if he desires to do so, he can protect himself against the alleged harsh rule by limiting his liability. Under our statute, all he has to do is to establish that he has exercised due care in providing honest servants and employees, and has taken every reasonable precaution to protect the person and property

of his guests. This is not difficult to establish where such care has been exercised, and difficult to disprove. So, in effect, the limitation provided by the statute is open to all reputable innkeepers, where in their own interest, care is taken to provide honest servants. If such care is not taken, the innkeeper should bear the burden of his negligence, because the guest is, to a very large degree, at his mercy, and, on grounds of public policy, entitled to his protection.

As to valuables the statute provides how the innkeeper may escape all liability by simply posting notices which advise the guest that there will be no liability unless such valuables are deposited in the hotel office. We see no real hardship imposed on the innkeeper, in our interpretation of the statute as a mere limitation on the common law rule, and not as abolishing the same and setting up a new standard. Much could be said in elaborating the reasons which impel us to the conclusion which we have reached in this case, but we think a quotation from the case of *Palace Hotel Co. v. Medart* (Ohio), 100 N. E. 317, completely covers this case, and we use it with approval:

"The reasons that lead up to the adoption of the stringent common law rule for protection of the traveling public in earlier times are not altogether wanting in principle in the present day. There is as much occasion for traveling now as then, and in fact the amount of traveling is immeasurably greater today than many years ago. It is also necessary for the traveling public of the present to receive food and shelter and the protection for such personal effects as their needs and comforts may require, as it ever was. While such protection may be provided to a certain extent for loss with reference to the custody of money, jewelry, and other valuables of guests, nevertheless, they are practically as helpless to protect themselves from the loss of their personal effects as ever. These are necessarily left in their rooms when they are out of the hotel for business or other purposes, and when the door has been locked and the key handed in at the office their power of self protection

is at an end; the entire control and supervision of their property has been turned over to the innkeeper and if, on their return at the end of the day, they find that their clothes have been taken away, it is obvious that they will have practically no means of knowing or proving the cause of their loss. It would seem to be just, therefore, that upon proof of such a state of facts the innkeeper should at least be called upon for an explanation, he having been placed in full charge of the property and being in receipt of a valuable consideration for its safe custody."

The first count of the declaration in this action, the only one in question, is a declaration based upon the theory that the common law liability of innkeepers still exists in this State. Limited as that liability is, under the statute aforesaid, one claiming to have suffered damages from the loss of property may still assert his case on the basis of such common law liability. However, as a defense to that count, defendants may show that they have exercised due care and diligence in the selection of servants and employees, and have exercised the reasonable care required by the statute. Upon that showing, the liability for loss of wearing apparel, baggage and other property will be limited to two hundred fifty dollars; but that limitation on the amount recoverable does not in any wise affect the right of a claimant to file a declaration based on the common law theory of liability, for the reason that, as we believe, the burden of showing facts which would entitle the innkeeper to the limitation aforesaid rests upon him.

We therefore reverse the ruling of the Circuit Court of Kanawha County, and remand the action for further proceeding.

*Reversed and remanded.*