CHRIS A. PARSLEY

*v.*

GENERAL MOTORS ACCEPTANCE CORPORATION,

A CORPORATION;

DAIRYLAND INSURANCE COMPANY, A CORPORATION;

TAG GALYEAN CHEVROLET, INC., *etc.*

(No. 14314)

Decided July 29, 1981.

---

*Pauley, Curry* and *Thaxton, James M. Sturgeon, Jr., Everette F. Thaxton & Thomas H. Vanderford, IV,* for Parsley.

*Jackson, Kelly, Holt and O'Farrell, Thornton G. Berry, Jr., John M. Slack, III,* for General Motors Acceptance Corp.

*Andrew J. Goodwin* for Dairyland Insurance.

*Kay, Casto & Chaney, Michael T. Chaney,* for Tag Galyean Chevrolet

McGRAW, JUSTICE:

This case is before this Court upon the petition of Chris A. Parsley for a writ of appeal, error and supersedeas from final orders of the Circuit Court of Kanawha County granting the motions of General Motors Acceptance Corporation, Dairyland Insurance Company, and Tag Galyean Chevrolet, Inc., for summary judgment. The appellant's cause of action was founded in tort. He alleged in his complaint that the negligence of the appellees caused him to be without insurance when his new car was totally destroyed in an accident. Because we agree with the trial court that none of the appellees owed a duty to the appellant to see that his car was insured, we affirm.

The material facts of this case are not in dispute. On May 31, 1975, the appellant purchased a 1975 Chevrolet Camaro from appellee Tag Galyean Chevrolet, Inc. As consideration for the Camaro the appellant traded in a 1963 Ford Thunderbird, paid fifty dollars cash, and executed an installment sales contract. The contract was subsequently assigned to General Motors Acceptance Corporation (GMAC) which financed the appellant's purchase. Creditor life and disability insurance was provided for in the contract the appellant signed, and was included in the

financing, but physical damage (or collison) insurance required by GMAC for approval of the loan, was not. At the time of the sale an attempt was made by the appellant and Mr. Fred Schanz, Tag Galyean's customer service manager, to secure collision insurance from Dairyland Insurance Company, the company which had previously insured the appellant's 1963 Thunderbird. However, because it was Saturday, the office of Dairyland's local agent was closed, and the attempt was unsuccessful. Nevertheless, Mr. Schanz had the appellant sign an"Agreement to Provide Accidental Physical Damage. Insurance" which represented to GMAC that arrangements had been made for collision insurance. Additionally, the appellant also signed a form which requested Dairyland Insurance Company to name GMAC as "loss payee" on the collision policy and further requested of Dairyland a provision for ten day notice to GMAC in the event of cancellation of the policy. The appellant claims he did not read any of these forms before signing them. Before leaving with the car that day, the appellant assured Mr. Schanz that he would secure collision coverage on the Camaro as soon as possible.

On either June 6th, or 20th, 1975, the appellant transferred the Dairyland policy on his 1963 Thunderbird to his new Camaro, and included collision coverage. The appellant subsequently received numerous computer card billings from Dairyland. Most of the bills received were erroneous in some manner, and the appellant sought the assistance of Mr. Schanz to get his insurance bills straightened out. Mr. Schanz recommended that the appellant contact his Dairyland agent in person to correct the mistakes.

The Dairyland policy which the appellant had transferred to his new car expired on July 9, 1975. Notice of the expiration was not sent to GMAC as had been requested. Sometime prior to the expiration date the appellant received a bill for the premium required to insure his Camaro for a three month period beginning July 9th. The appellant was unable to afford the premium, and enlisted the aid of Mr. Schanz to see if he could get cheaper insurance. Initially, Mr. Schanz told the appellant that he

might be able to get cheaper collision insurance. Mr. Schanz called several insurance companies and found that the appellant could get this insurance. According to the deposition of Mr. Schanz, he had a conversation with the appellant on Tuesday, July 18, 1975, in which the appellant agreed to meet with him on the following Friday and to pay $80 towards the insurance which Mr. Schanz was going to obtain for the appellant. The appellant failed to keep this appointment. At eleven or twelve p.m. that same Friday the appellant was involved in a single car accident in which the new Camaro was totally destroyed.

The appellant knew that Mr. Schanz had not procured insurance for him at the time of the accident. He apparently believed he had a thirty-day grace period to pay the premium on his Dairyland policy due July 9, 1975, despite the fact that each of the billings he received from Dairyland stated at the bottom: "NO GRACE PERIOD! If premium is not received in office by due date your coverage expires." Mr. Schanz was unsure whether the appellant had insurance at the time of the accident. In their conversation on Tuesday, July 18th, the appellant told Mr. Schanz that Dairyland was going to cancel his insurance. When Mr. Schanz asked the appellant if he had insurance at that time, the appellant replied that he didn't know. The depositions of both the appellant and Mr. Schanz reveal that Mr. Schanz told the appellant that if he didn't have insurance he shouldn't be driving the car, and that he offered to garage the Camaro for the appellant.

On October 22, 1975, the appellant instituted an action in the Circuit Court of Kanawha County alleging that it was through the negligence of the appellees, General Motors Acceptance Corporation, Dairyland Insurance Company, and Tag Galyean Chevrolet Inc., that he was without insurance at the time of his accident. All of the appellees answered the complaint with denials of liability. Additionally, GMAC counterclaimed for the balance due on its conditional sales contract on the basis that the appellant was in default of payments and had failed to keep the Camaro continuously insured as required by their written agreement. The appellant answered this counterclaim

with a general denial of liability and noted to the court that payments on the car were being made into an escrow account.

After discovery by means of interrogatories, depositions and affidavits, all of the appellees moved for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure on the grounds that there were no genuine issues of material fact and that none of the appellees had a duty to provide the appellant with collision insurance. Furthermore, appellee GMAC also moved for summary judgment on its counterclaim. The circuit court granted all of the appellees' motions for summary judgment, ruling as a matter of law that none of the appellees had a legal duty to provide the appellant with collision insurance, and that by virtue of the appellant's default, GMAC was entitled to the balance due under the conditional sales contract.

The appellant assigns the granting of the appellees' motions for summary judgment as error. He admits that he had a contractual responsibility to purchase continuous collision coverage, but contends that the negligent conduct of the appellees caused his non-performance.

It is axiomatic that in order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken. *Hinkle v. Martin*, 163 W.Va. 482, 256 S.E.2d 768 (1979); *Atkinson v. Harman*, 151 W.Va. 1025, 158 S.E.2d 169 (1967); *Morrison v. Roush*, 110 W.Va. 398, 158 S.E. 514 (1931); *Uthermolen v. Bogg's Run Co.*, 50 W.Va. 457, 40 S.E. 410 (1901). The court below found as a matter of law that none of the appellees owed a duty of care to the appellant to provide or procure collision insurance for him. We agree.

Upon examination of the material facts in the case at bar it clearly appears that GMAC owed no duty of care to the appellant in connection with insurance for his automobile. The risk of loss on property sold under a conditional or installment sales contract rests on the buyer after tender of delivery. W.Va. Code § 46-2-509 (1966). Additionally, it was

the express duty of the appellant by virtue of his written agreement with GMAC to provide continuous collision insurance on the Camaro he purchased. The contractual relationship of the parties placed on such obligation on GMAC.

On the record before us it likewise appears that appellee Dairyland Insurance Company owed no duty to the appellant to provide him with insurance. The Dairyland policy which the appellant had on his new automobile expired July 9, 1975. Dairyland advised the appellant on its billing statements that the premium was due on July 9th and that coverage would not extend past that date unless the premium was paid. The appellant, however, made no effort to purchase insurance from Dairyland after this date. The payment or agreement to pay an insurance premium is the consideration for an insurance contract. If the premium is not paid, there is no insurance. *Nationwide Mutual Insurance Co. v. Smith*, 153 W.Va. 817, 172 S.E.2d 708 (1970). *See also Adkins v. Western and Southern Indemnity Co.*, 117 W.Va. 541, 186 S.E. 302 (1936); *Hare v. Connecticut Mutual Life Insurance Co.*, 114 W.Va. 679, 173 S.E. 772 (1934); *Rominick v. Inter Ocean Casualty Co.*, 113 W.Va. 846, 169 S.E. 446 (1933). Consequently the circuit court was correct in ruling that Dairyland owed no duty to the appellant to provide him with collision insurance.

The appellant argues that Tag Galyean Chevrolet, Inc., owed him a duty of care because its employee, Mr. Schanz, occupied the dual role of car dealer and insurance agent in the transaction. However, Mr. Schanz made no attempt to sell the appellant collision insurance during the initial sales transaction. Rather the appellant agreed that he would secure collision coverage himself. Moreover the appellant knew at the time of sale that the cost of collision coverage was not included in the installment sales contract.

The facts revealed by the record support a finding that after July 9th Mr. Schanz did act as an insurance agent or broker for the purpose of obtaining collision coverage for the appellant, and that he promised the appellant he could obtain collision coverage for him. There are numerous

cases from other jurisdictions that at least implicity support the general rule that an agent or broker who, with a view to compensation for his services, undertakes to procure insurance for another, and through his negligence fails to do so, will be held liable for any damage resulting therefrom. However, in most of the cases where the duty to procure insurance has been established, it has at least appeared that the agent or broker engaged in some type of affirmative conduct which was sufficient to warrant an assumption on the part of the client that the desired coverage had been or would be obtained. *See* Annot., 64 A.L.R.2d 398 § 2(a) (1975) and cases cited therein. The deposition of the appellant reveals that at the time of the accident the appellant knew he did not have any insurance procured by Mr. Schanz. Thus the element of reliance by the client on the agent's representations is missing from this case, and accordingly, there was no duty on the part of Mr. Schanz to procure the insurance so as to impose liability on Tag Galyean Chevrolet, Inc., for the appellant's loss.

It appears from the record that the reason the appellant was without insurance on the date of the accident was because he had a mistaken belief that he had a 30-day grace period to pay the premium due on July 9th, even though the bills he received from Dairyland explicitly stated that there was no grace period. The record does not support a finding that either GMAC, Dairyland Insurance Company, or Tag Galyean Chevrolet, Inc., owed the appellant a duty to provide collision insurance.

As a general rule actions involving issues of negligence are not susceptible of adjudication by summary judgment. *Anderson v. Turner*, 155 W.Va. 283, 184 S.E.2d 304 (1971). Where, however, the material facts established by the pleadings and other matters before the trial court are undisputed and only one inference may be drawn from them by reasonable minds, summary judgment is proper. *See Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971); *Petros v. Kellas*, 146 W.Va. 619, 122 S.E.2d 177 (1961). Consequently, since the material facts in the case at bar are not in dispute, and since they establish as a matter of

law that none of the appellees owed the appellant a duty of care which would support the appellant's negligence action, the granting by the lower court of the appellees' motions for summary judgment on the issue of negligence was correct. Furthermore since the undisputed facts also establish that appellee GMAC is entitled as a matter of law to the balance due on its installment sales contract, summary judgment on its counterclaim was also properly entered below.

For the foregoing reasons the orders of the Circuit Court of Kanawha County granting the appellees' motions for summary judgment are affirmed.

*Affirmed.*