685 S.E.2d 219

Clifford CRUM, Plaintiff
Below, Appellant,

v.

EQUITY INNS, INC., d/b/a the Hampton
Inn; Virginia Inn Management of
W.VA., Inc.; Travelers Property Casualty
Insurance Company; and John Doe,
Defendants Below, Appellees.

No. 34400.

Supreme Court of Appeals of
West Virginia.

Submitted April 8, 2009.

Decided June 22, 2009.

judgment to Equity Inns, and by refusing to permit Appellant to amend his complaint against Equity Inns to assert claims for *res ipsa loquitur* and strict liability.[1] Conversely, Equity Inns asserts that the circuit court properly granted it summary judgment and appropriately denied Appellant's motion to amend his complaint as to Equity Inns. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the December 10, 2007, order of the Circuit Court of Raleigh County is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On July 7, 2004, Appellant, a mediator employed with Federal Mediation and Conciliation Service, suffered injuries when a thirty-three pound light fixture which had been attached to the ceiling fell on his head while he was mediating a case in a conference room at the Hampton Inn located in Beckley, West Virginia. Appellant filed the instant action in the Circuit Court of Raleigh County on March 31, 2005, alleging that he was injured as a result of John Doe's negligence in failing to properly install the light fixture to the ceiling, Virginia Inn Management, Inc.'s [2] [hereinafter "VIM"] negligence in failing to properly inspect and maintain its premises in a safe manner prior to the sale of the property, and Equity Inns' negligence in failing to properly inspect and maintain the premises in a safe manner.[3] Appellant also

Roger D. Forman, Forman & Huber, L.C., Charleston, for Appellant.

Mary Beth Chapman, Pullin, Fowler & Flanagan, Beckley, for Appellee, Equity Inns.

Ben B. White, III, White & Henderson Princeton, Gary W. Hart, Jackson Kelly, Charleston, for Appellee, VIM, Inc.

PER CURIAM:

The instant action is before this Court upon the appeal of Clifford Crum [hereinafter "Appellant"] from a December 10, 2007, order of the Circuit Court of Raleigh County denying a motion to amend filed by Appellants against Equity Inns, Inc. [hereinafter "Equity Inns"] and refusing to disturb its prior grant of summary judgment as to Equity Inns. Herein, Appellant alleges that the circuit court erred by granting summary

---

1. Appellee Equity Inns has been dismissed from the instant action on summary judgment. However, this case is still currently pending before the circuit court as it pertains to the remaining defendants. Although Appellant attempts to raise collective issues in his brief regarding all defendants, this Court will only address those issues raised pertaining to Equity Inns.

2. Appellee Beckley Hotel Limited Partnership and/or VIM contracted in or around 1992 with Construction Concepts, Inc. or Wright & Associates to construct the building that now operates as the Hampton Inn at 110 Harper Park Drive, Beckley, West Virginia. The architect on this project was W.R. Eades, Jr. It is believed that the subject light fixture was installed by Construction Concepts, Inc., Wright & Associates, other builders, or by decorators brought in by the original

owner or manager of the building to provide lighting and interior decor in completion of the building. VIM contends that it provided accounting and managing services for the business until November 18, 1994, when Beckley Hotel Limited Partnership sold the building to Equity Inns. Equity Inns is the current owner of the subject property.

3. VIM previously filed a Motion to Dismiss on May 11, 2005, which was granted by the circuit court on July 1, 2005, on the grounds that VIM, as a seller of real property, did not owe to a subsequent invitee of the purchaser a duty to inspect the premises prior to the sale. The circuit court found that the cause of action pled against VIM arose from VIM's role as a vendor, not from its role as a builder. The court held

named Travelers Property and Casualty Insurance Company in the Complaint, asserting a claim for bad faith.

On May 5, 2006, Equity Inns filed a Motion for Summary Judgment seeking dismissal of the only claim filed against it—a claim of negligence for failure to properly inspect and maintain its premises in a safe manner.[4] In its Motion for Summary Judgment, Equity Inns provided the expert report of architect and planner, Mr. Francis A. Guffey, II, dated April 12, 2006, which opined that the subject light fixture fell because it was improperly installed with plastic wall expansion anchors and #8 wood screws mounted in the five-eighths inch gypsum board ceiling only, rather than with one-half inch by three inch Tapcon Anchors that would have reached past the ceiling, through the furring space, and into the concrete deck above, as per the recommendation of Lithonia Lighting, the manufacturer of the light fixture. This defective light fixture was installed approximately two years before Equity Inns purchased and took possession of the building in 1994. Equity Inns also presented Mr. Guffey's expert testimony wherein he opined that once the installation of the light fixture was complete, its defects were not capable of being observed or detected by anyone changing the light bulbs or otherwise examining the fixture.

Thereafter, on May 11, 2006, Appellant filed a one-page Response in Opposition to Equity Inns' Motion for Summary Judgment, asserting that Equity Inns' motion was premature, as the proposed amended complaint raised a *res ipsa loquitur* claim[5] and Appellant sought discovery as to the insurance policies and contracts between the parties to the sale and construction of the building, revealing who may be responsible for the condition which caused the light fixture to

fall. Appellant also filed a Motion to Amend Complaint and for Relief From Judgment Order Dismissing Virginia Inn Management of West Virginia on May 12, 2006, asserting that there were new facts discovered through Equity Inns' expert which implicated VIM and other newly-identified parties, including Construction Concepts, Inc., who were formerly John Does. The proposed amended complaint contained additional claims for *res ipsa loquitur* and strict liability against all parties.

Equity Inns filed a Reply to Appellant's Response in Opposition to its Motion for Summary Judgment on May 22, 2006, alleging that Appellant failed to meet his burden under Rule 56 of the *West Virginia Rules of Civil Procedure* of producing affidavits, depositions, or discovery demonstrating that a genuine issue of fact existed for trial, and failed to demonstrate adequate reasons why a continuance for further discovery was needed. Additionally, Equity Inns argued that the fact that Appellant had filed a motion to amend his complaint was not sufficient reason to deny summary judgment, as the motion to amend had not yet been granted. Thereafter, on June 1, 2006, Equity Inns filed a Response to Appellant's Motion to Amend Complaint and for Relief From Judgment Order Dismissing Virginia Inn Management of West Virginia asserting that Appellant could not state a legitimate claim for *res ipsa loquitur* against Equity Inns because Appellant could not eliminate other responsible causes for the incident as required by our law in *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997), since the conduct of third persons was implicated by the evidence presented by Equity Inns. Equity Inns also asserted that Appellant could not state a legitimate claim against it based upon strict liability because the *Restatement (Second) of Torts* §§ 519–20 and West Virginia case law

that to succeed on such a tort claim, Appellant must allege that VIM, as a vendor of real property, breached a duty owed to the Appellant. For reasons more thoroughly stated below, VIM was subsequently brought back into the instant action, and currently remains a defendant in the case.

4. On January 9, 2006, Appellant filed a Motion for Leave to File Amended Complaint, seeking to add two additional counts against Equity Inns

and John Doe for strict liability and *res ipsa loquitur*. This motion was not addressed by the Court prior to Equity Inns' Motion for Summary Judgment.

5. For reasons unknown, Appellant's Response in Opposition to Equity Inns' Motion for Summary Judgment did not address the strict liability claim Appellant also sought against all parties.

demonstrate, as a matter of law, that the operation of a hotel would not constitute an abnormally dangerous activity.

By Memorandum entered on July 27, 2006, and Order entered July 28, 2006, the circuit court granted Equity Inns' Motion for Summary Judgment, finding that Appellant's response to Equity Inns' Motion for Summary Judgment failed to challenge the opinion of Equity Inns' expert that the failure of the light fixture was due to a construction defect and not by Equity Inns' insufficient or inadequate maintenance or inspection of the fixture. Thus, the circuit court found that Appellant produced no evidence, depositions, affidavits, admissions, or other materials which show that there is an issue of material fact that Appellant breached a duty owed to Appellant. Further, the circuit court found that although Appellant alleged that Equity Inns' motion was premature because further discovery needed to be conducted, he failed to identify with reasonable specificity the facts to be discovered, or explain how the facts might show that there is a genuine issue of material fact that would defeat summary judgment or show why he had not already engaged in such discovery, as required by *Elliott v. Schoolcraft*, 213 W.Va. 69, 576 S.E.2d 796 (2002).

Additionally, the circuit court found that although Appellant alleged that Equity Inns' motion was premature because a proposed amended complaint had been filed, this allegation was not sufficient to prevent summary judgment, as the possibility that Appellant may have been permitted to file an amended complaint is not recognized by Rule 56 of the *West Virginia Rules of Civil Procedure* as a basis upon which summary judgment should be refused. Furthermore, in assessing whether the motion to amend prevented summary judgment, the circuit court found that the proposed amended complaint did not state any allegations against Equity Inns that were not among the issues raised in the Motion for Summary Judgment, because the only factual allegations the Appellant made in the proposed amended complaint were the same as those previously stated-that Equity Inns failed to properly install the light fixture and that it was negligent in failing to properly inspect and maintain its premises in a safe manner. The circuit court ruled that Appellant could not present any evidence through its claim for *res ipsa loquitur* against Equity Inns that would raise an issue of fact preventing summary judgment.[6]

Following those orders, on September 22, 2006, Appellant filed a Petition for Appeal with this Court claiming that it was error for the circuit court to deny his motion to amend his complaint, including his new claims of *res ipsa loquitur* and strict liability; that it was error for the circuit court to deny him the right to proceed against VIM because his claims were not extinguished by the statute of repose; and that the circuit court erred in granting summary judgment to Equity Inns. However, subsequent to filing the Petition for Appeal, Appellant's counsel located a deed indicating that the subject accident of July 7, 2004, occurred a few months short of ten years after the November 18, 1994, sale of the hotel to Equity Inns Partnership, L.P. Because the circuit court's order denying Appellant's Motion to Amend Complaint and for Relief from Judgment Order Dismissing Virginia Inn Management, Inc. was grounded on the court's mistaken belief that the subject incident occurred more than ten years after VIM sold the building and that the

---

6. Additionally, by Memorandum dated July 28, 2006, and Order dated August 2, 2006, the circuit court denied Appellant's Motion to Amend Complaint and for Relief from Judgment Order Dismissing Virginia Inn Management of West Virginia. Regarding Appellant's motion to amend his complaint as to Equity Inns, the circuit court merely reiterated that the motion to amend was denied, and that the issue was addressed by the court when it ruled on Equity Inns' Motion for Summary Judgment. As to Appellant's request for relief from the judgment order dismissing VIM, the circuit court found that Appellant failed to adequately address this issue in its motion and present any argument that the criteria and requirements of Rule 60(b) apply to the present circumstances. Additionally, the court found that the statute of repose, W. Va.Code § 55-2-6(a), barred the cause of action stated in Appellant's proposed amended complaint against VIM because VIM sold the building to Equity Inns in 1994, more than ten years before the subject incident occurred. Accordingly, Appellant's request for relief from the judgment dismissing VIM and Appellant's request to amend the complaint as to VIM were denied. This belief by the court was subsequently determined to be in error.

statute of repose under W. Va.Code 55–2–6(a) barred the cause of action, Appellant and VIM filed a Joint Motion to Remand the appeal to the Circuit Court of Raleigh County on December 6, 2006. On December 19, 2006, Equity Inns filed an Objection to the Motion for Remand as it relates to Appellant's claim against Equity Inns, stating that the fact that the incident occurred just less than ten years after the sale of the hotel had no bearing on Appellant's cause of action against Equity Inns, which owned and operated the hotel at the time of the incident. Because a joint Motion to Remand had been filed, on January 24, 2007, this Court granted Appellant and VIM's motion and remanded the matter to the circuit court for further proceedings. No further action was taken on the appeal.

Thereafter, on February 26, 2007, Appellant filed a second Motion to Amend Complaint and for Relief from Judgment Order Dismissing Virginia Inn Management, Inc. before the circuit court, asserting that there were new facts discovered which implicated VIM, that other defendants which were previously named as John Does had been identified, and that the two-year statute of limitations had not yet expired at the time his original motion to amend was filed. Appellant's newly proposed amended complaint was virtually identical to the amended complaint he had submitted to the circuit court on May 11, 2006, which the circuit court initially refused.

On March 12, 2007, Equity Inns filed a Response to Appellant's motion alleging virtually the same arguments it previously made in response to the first motion to amend filed by Appellant. On March 19, 2007, Appellant filed a two-page reply which asserted that summary judgment was premature until the case was completely developed and discovered pursuant to a time frame which allowed for liberal discovery and development of experts. In particular, Appellant contended that the sales contract which was requested before summary judgment was granted could not be found, but could possibly determine liability for the accident. Appellant also submitted an affidavit of counsel regarding the need for further discovery which alleged that Appellant still needed to take the deposition of Francis Guffey, to hire an expert to review Mr. Guffey's report, to obtain sales receipts and warranties for the light fixture requested in previous discovery, and obtain contracts for the sale of the property which were also requested in previous discovery.

On October 31, 2007, a hearing was conducted before the circuit court where the parties discussed the issues of whether the summary judgment granted by the circuit court in favor of Equity Inns regarding Appellant's negligence claim should be set aside; and whether Appellant should be permitted to amend his complaint to state claims against Equity Inns based on the legal theories of *res ipsa loquitur* and strict liability although the circuit court had previously ruled that such claims could not be maintained. Following the hearing, the circuit court entered an order on December 10, 2007, that held that there was no reason to disturb its prior ruling which granted summary judgment to Equity Inns, and denied Appellant's motion to amend his complaint as it related to Equity Inns. Specifically, the circuit court found that "[t]he amended complaint does not allege new allegations against [Equity Inns] that were not disposed of already in the ... grant of summary judgment."[7] It is from this order that Appellant now appeals.

## II.

### STANDARD OF REVIEW

■ Our review of the circuit court's grant of summary judgment to Equity Inns is *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("[a] circuit court's entry of summary judgment is reviewed *de novo*."). However, regarding the circuit court's denial of Appellant's motion to amend the complaint to assert claims for *res ipsa loquitur* and strict liability against Equity Inns, our standard of review is abuse of discretion. We have held that

---

7. The circuit court granted Appellant's motion to amend as to all parties except Equity Inns.

"[a] trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should freely be given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend."

Syl. Pt. 6, *Perdue v. S.J. Groves and Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968). With these standards of review in mind, we proceed to consider the arguments of the parties.

## III.

## DISCUSSION

Herein, Appellant asserts two assignments of error. First, Appellant alleges that the circuit court erred by granting summary judgment to Equity Inns because discovery was still pending and a motion to amend his complaint had been filed. Second, Appellant alleges that the circuit court erred by refusing to permit Appellant to amend his complaint to assert claims for *res ipsa loquitur* and strict liability against Equity Inns. We will address each of these arguments separately.

### A. Summary Judgment

Rule 56(c) of the *West Virginia Rules of Civil Procedure* allows a Motion for Summary Judgment to be granted to the defendant if the pleadings, depositions, answers to interrogatories, and any admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. *See Angelucci v. Fairmont General Hosp., Inc.*, 217 W.Va. 364, 368, 618 S.E.2d 373, 377 (2005)(*quoting Sly., Redden v. Comer*, 200 W.Va. 209, 488 S.E.2d 484 (1997); Syl. Pt. 1, *Wayne County Bank v. Hodges*, 175 W.Va. 723, 338 S.E.2d 202 (1985)). "The essence of the inquiry the court must make is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Wilson v. Daily Gazette Co.*, 214 W.Va. 208, 588 S.E.2d 197 (2003)(*quoting Williams v. Precision Coil*, 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995)). The dispute about a material fact is genuine only when a reasonable jury could render a verdict for the nonmoving party if the record at trial were identical to the record compiled in the summary judgment proceedings. *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 698, 474 S.E.2d 872, 878 (1996).

In West Virginia, landowners and occupiers such as Equity Inns are not liable in negligence for injuries that occur to non-trespassing entrants of their land, unless such landowners or occupiers breach their duty of reasonable care under the circumstances. *Mallet v. Pickens*, 206 W.Va. 145, 155, 522 S.E.2d 436, 446 (1999). In order to establish a prima facie case of negligence in West Virginia, a plaintiff must show that a defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action will lie without a duty broken. *Jack v. Fritts*, 193 W.Va. 494, 497–498, 457 S.E.2d 431, 434–435 (1995)(*quoting* Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981)).

In the case *sub judice,* Equity Inns filed a Motion for Summary Judgment seeking dismissal with prejudice of the claim asserted in Appellant's complaint that Equity Inns was negligent in failing to properly inspect and maintain its premises in a safe manner. In support of said motion, Equity Inns provided the expert report of architect and planner, Francis A. Guffey, II, which opined that the subject light fixture fell because it was improperly installed with plastic wall expansion anchors and # 8 wood screws mounted in the five-eighths inch gypsum board ceiling only, rather than with one-half inch by three inch Tapcon Anchors that would have reached past the ceiling, through the furring space, and into the concrete deck above, as per the recommendation of Lithonia Lighting, the manufacturer of the light fixture. This defective light fixture was installed approximately two years before Equity Inns purchased and took possession of the building in 1994. Significantly, Equity Inns also pre-

sented Mr. Guffey's expert testimony wherein he opined that once the installation of the light fixture was complete, its defects were not capable of being observed or detected by anyone changing the light bulbs or otherwise examining the fixture.

Once Equity Inns filed a properly supported Motion for Summary Judgment, Appellant had the affirmative burden of producing affidavits, depositions, answers to interrogatories, and/or a response which set forth specific facts showing that a genuine issue for trial existed. However, Appellant failed to meet his burden to defeat summary judgment. In his one-page Response to Equity Inns' Motion for Summary Judgment, Appellant argued that Equity Inns' Motion for Summary Judgment was premature, as the proposed amended complaint raised a *res ipsa loquitur* claim and Appellant sought discovery as to the insurance policies and contracts between the parties to the sale and construction of the building, revealing who may be responsible for the condition which caused the light fixture to fall. However, Appellant failed to produce any evidence, depositions, affidavits, admissions, or other materials which show that there is an issue of material fact that Appellant breached a duty owed to Appellant, and failed to identify with reasonable specificity the facts that still needed to be discovered, or explain how the facts might show that there is a genuine issue of material fact that would defeat summary judgment. Rule 56 of the *West Virginia Rules of Civil Procedure* requires more than this.

Indeed, we have held that,

[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the *West Virginia Rules of Civil Procedure.*

*Stonewall Jackson Memorial Hosp. Co. v. American United Life Ins. Co.,* 206 W.Va. 458, 466, 525 S.E.2d 649, 657 (1999). To meet its burden, the nonmoving party on a motion for summary judgment must offer more than a mere scintilla of evidence and must produce evidence sufficient for a reasonable jury to find in a non-moving party's favor. The evidence illustrating the factual controversy cannot be conjectural or problematic. *Williams v. Precision Coil, Inc.,* 194 W.Va. at 59, 459 S.E.2d at 336. The nonmoving party must also present evidence that contradicts the showing of the moving party by pointing to specific facts demonstrating that there is a trial-worthy issue which is not only a genuine issue but also is an issue that involves a material fact. Moreover, the nonmoving party cannot create a genuine issue of material fact through mere speculation or building of one inference upon another. *Id.* at 60, 459 S.E.2d at 337. The party opposing a motion for summary judgment may not rest on allegations of his or her unsworn pleadings and must instead come forth with evidence of a genuine factual dispute. Mere allegations are insufficient in response to a motion for summary judgment to show that there is a genuine issue for trial. *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. at 698 nn. 10, 11, 474 S.E.2d at 878 nn. 10, 11.

An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. *Elliott v. Schoolcraft,* 213 W.Va. at 73, 576 S.E.2d at 800. However, at a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier. *Id.*

In assessing the merits of Appellant's arguments herein, Appellant continues to make very loose, generalized assertions that summary judgment was granted prematurely because discovery was still pending and a motion to amend had been filed. As he did below, Appellant fails to identify with reasonable specificity any other facts to be discovered, or explain how the facts might show that there is a genuine issue of material fact that would defeat summary judgment or show why he had not already engaged in such discovery. The only specific argument Appellant makes is that summary judgment was granted prematurely because the written report of Equity Inns' expert architect, Francis Guffey, leaves possible inferences and questions of fact that Equity Inns would be responsible for contribution to the accident wherein he stated:

> "The furnished photos indicate a light frame that was to be anchored to the ceiling in four locations. The anchoring system used included plastic wall expansion anchors and #8 wood screws. The plastic anchor was mounted in the 5/8″ gypsum board ceiling only. This is a totally improper method of anchoring this fixture, as the pullout resistance of the anchor is extremely low. This type of anchoring would not be apparent to anyone changing the light bulbs or otherwise examining the fixture."

Appellant contends that an inference exists that if it was owned by Equity Inns for almost 10 years, they might have caused or hastened the process of the light fixture falling by changing the bulbs or cleaning the light fixture. However, this argument was never presented to the circuit court below. To the extent that is now attempting to make an argument that was not previously presented to the circuit court for consideration, we will not now entertain the same. *See Mayhew v. Mayhew*, 205 W.Va. 490, 506, 519 S.E.2d 188, 204 (1999)("Our law is clear in holding that, as a general rule, we will not pass upon an issue raised for the first time on appeal."); *Kronjaeger v. Buckeye Union Ins. Co.*, 200 W.Va. 570, 585, 490 S.E.2d 657, 672 (1997); *State v. Miller*, 197 W.Va. 588, 597, 476 S.E.2d 535, 544 (1996)("Indeed, if any principle is settled in this jurisdiction, it is that, absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal.").

When the circuit court ruled on Equity Inns' Motion for Summary Judgment, there was no outstanding discovery as to Equity Inns. A review of the record reveals that Equity Inns had already provided Appellant with every document that was responsive to his requests that was in Equity Inns' possession. In fact, Appellant had been given copies of Equity Inns' insurance policies at the time summary judgment was granted, which revealed no information regarding whether Equity Inns was responsible for the condition that caused the subject light fixture to fall. Additionally, although the sales contract that Appellant requested had not been produced by Equity Inns because it was not in its possession, VIM subsequently provided this contract to Appellant on November 18, 2008. The sales agreement also does not appear to impute any liability to Equity Inns.[8]

Additionally, the circuit court correctly held that the proposed amended complaint did not prevent summary judgment. The proposed amended complaint simply rehashed the same two issues, improper installation of the light fixture and improper inspection of its premises, and thus, there was nothing new presented that prevented summary judgment. In its order granting summary judgment to Equity Inns, the circuit court explained,

> An examination of the proposed amended complaint discloses that it does not state any allegations against this defendant that were not among the issues raised in the Rule 56 motion. The only factual allegations in the amended complaint against the moving Defendant are that it (among

---

8. Although a copy of said contract could not be located within the record, Equity Inns represents that the sales contract states the following:

> 8.1 Liability of Purchaser. Except for any obligation expressly assumed or agreed to be assumed by the Purchaser hereunder, the Purchaser does not assume any obligation of the Seller or any liability for claims arising out of any occurrence prior to Closing.

"all defendants") failed to "properly install ... the fixture" and that Hampton (the moving defendant) was negligent "in failing to properly inspect and maintain its premises in a safe manner.

Both of these issues were disposed of in the consideration of the motion for summary judgment. There is no dispute that the moving Defendant did not participate in the installation of the fixture, and the Plaintiff presented no factual material in response to the Defendant's expert report that points to any specific act or omission which could constitute the failure to maintain or inspect the light fixture in a way which could have disclosed the defect.

The circuit court also considered, but rejected, Appellant's attempt to keep his case alive against Equity Inns by amending his complaint to rely upon the principle of *res ipsa loquitur*. The court's analyzed the matter as follows:

Plaintiff's proposed amended complaint alleges in Count 13 that the moving Defendant is "liable to the plaintiff under the theory of Res Ipsa Loquitur since the light fixture was under the exclusive control and management of defendant Equity Inn." Count 13 asserts the application of a legal principle as distinguished from the assertion of fact. As such, the Court is permitted to determine, as a legal issue, whether the reliance on res ipsa loquitur in Count 13 is sufficient to defeat the Rule 56 motion for summary judgment.

It is well established that the principle of res ipsa loquitur does not create a cause of action. It is, rather, an evidentiary principle that allows the trier of fact to infer negligence when three criteria are present: "1) the instrumentality which causes the injury must be under the exclusive control and management of the defendant; 2) the plaintiff must be without fault; and 3) the injury must be such that in the ordinary course of events it would not have happened had the one in control of the instrumentality used due care."

The permissible inference is not a substitute for a factual basis upon which to find negligence. "In making general allegations of fault, stated without support, a party cannot avoid summary judgment merely because the doctrine of res ipsa loquitur is invoked. The plaintiff must still produce evidence to establish the existence of a genuine issue of material fact for a res ipsa loquitur case to survive." Syl. Pt. 6, *Bronz v. St. Jude's Hosp. Clinic*, 184 W.Va. 594, 402 S.E.2d 263 (1991).

We agree with the circuit court. Because the circuit court properly found that Appellant did not offer specific facts or evidence showing that there is a genuine issue remaining for trial, the circuit court's grant of summary judgment to Equity Inns should be affirmed.

### B. Motion to Amend Complaint

In his second assignment of error, Appellant maintains that the circuit court erred in refusing to allow Appellant to amend his complaint to assert claims for *res ipsa loquitur* and strict liability against Equity Inns. Upon thoroughly reviewing the arguments of the parties and the record before us, we find that the circuit court correctly refused to permit Appellant to amend the complaint.

Addressing Appellant's claim for *res ipsa loquitur* first, Appellant alleges that "Defendant Equity Inn, Inc. d/b/a The Hampton Inn, and/or all other defendants are also liable to the plaintiff under the theory of Res Ipsa Loquitur since the light fixture in question was under the exclusive control and management of defendant Equity Inn, Inc. d/b/a The Hampton Inn, and/or all other defendants. Mr. Crum was entirely without fault and his injuries would not have happened in the ordinary course of events had the defendants in control used dire (sic) care." However, pursuant to the evidentiary rule of *res ipsa loquitur*, it may only be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when: 1) the event is of a kind which ordinarily does not occur in the absence of negligence; 2) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence, and 3) the indicated negligence is within the scope of the defendant's duty to the plaintiff. Syl. Pt. 3, *Kyle v. Dana Transport, Inc.*, 220 W.Va. 714, 649 S.E.2d 287 (2007); *Beatty v.*

Ford Motor Co., 212 W.Va. 471, 574 S.E.2d 803 (2002); Syl. Pt. 4, *Foster v. City of Keyser,* 202 W.Va. 1, 501 S.E.2d 165 (1997).

Herein, there is no question that Appellant cannot satisfy the second criteria necessary for the invocation of res ipsa loquitur, because other responsible causes, including the conduct of third persons, have not been sufficiently eliminated by the evidence. To the contrary, the conduct of third persons who incorrectly installed the light fixture has been implicated by the evidence to be the responsible cause for the subject incident. Appellant has also maintained that there are multiple parties who may have been responsible for his injury, including the builders, unknown decorators, and previous owners and managers. We held in Syl. Pt. 5, *Kyle v. Dana Transport, Inc.,* 220 W.Va. 714, 649 S.E.2d 287, that

> The doctrine of *res ipsa loquitur* cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances.

*Id.* (quoting Syl. Pt. 5, *Davidson's, Inc. v. Scott,* 149 W.Va. 470, 140 S.E.2d 807 (1965)).

Furthermore, regarding Appellant's claim for strict liability against Equity Inns, we note that, for reasons unknown, Appellant did not initially address this claim in his response to Equity Inns' Motion for Summary Judgment. Thus, this issue was not discussed or ruled upon by the circuit court below.[9] However, even if the issue had been properly presented below, the circuit court would not have committed error in denying Appellant's motion to amend as it pertains to this claim. Appellant's proposed amended complaint alleges that "Defendant's Equity Inn, Inc. and all others are strictly liable to the plaintiff because the situation he faced

with the falling light fixture was inherently dangerous to plaintiff." In his brief, Appellant herein alleges that "[t]he jury should be allowed to consider this case and make all appropriate inferences. That is why we urge the unusual theory of strict liability on this Court as well. There must be some rational way for Mr. Crum to be compensated." Appellant also alleges that Equity Inns "should be legally responsible for the incident. It occurred on their watch on their property."

In *Peneschi v. National Steel Corp.,* 170 W.Va. 511, 295 S.E.2d 1 (1982), we explicitly adopted into our common law the doctrine of strict liability for abnormally dangerous activity as articulated in the *Restatement (Second) of Torts* (1976). *Restatement (Second) of Torts* § 519 (1976) provides that: (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm; and 2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous. *Restatement (Second) of Torts* § 520 (1976) states that in determining whether an activity is abnormally dangerous, six factors are to be balanced. The factors are:

> a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> b) likelihood that the harm that results from it will be great;
>
> c) inability to eliminate the risk by the exercise of reasonable care;
>
> d) extent to which the activity is not a matter of common usage;
>
> e) inappropriateness of the activity to the place where it is carried on; and
>
> f) extent to which its value to the community is outweighed by its dangerous attributes.

*Restatement (Second) of Torts,* § 520.

In applying the doctrine of strict liability in prior cases, we have, for instance, ruled

---

9. Despite the fact that the strict liability claim was not raised or addressed by the circuit court below, Equity Inns has responded to Appellant's arguments on appeal that the court erred in

refusing to permit him to amend his complaint to assert a strict liability claim. Accordingly, we will address this argument.

that the use of explosives in blasting operations, though necessary and lawfully used, being intrinsically dangerous and extraordinarily hazardous, renders the contractor liable for damages resulting to the property of another from such blasting, without negligence on the part of the contractor, whether the damage was caused by vibrations or by casting rocks or other debris on the complaining party's property. *Whitney v. Ralph Myers Contracting Corp.*, 146 W.Va. 130, 118 S.E.2d 622 (1961); *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.*, 152 W.Va. 549, 165 S.E.2d 113 (1968); *Perdue v. S.J. Groves & Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250. We have also held that the sale and distribution of gasoline could be an abnormally dangerous activity and is subject to the *Restatement (Second) of Torts* test that is applicable to any other activity involving similar or greater danger to the public. *Bowers v. Wurzburg*, 207 W.Va. 28, 528 S.E.2d 475 (1999). We have never applied the doctrine of strict liability to hotels and hotel owners, and choose not to do so here.

Although Appellant urges this Court to "tread new waters" and hold hotels and their owners strictly liable for any injuries that occur on their premises, the *Restatement (Second) of Torts* § 519–20 and our prior case law demonstrate that the operation of a hotel would not constitute an abnormally dangerous activity which would subject Equity Inns to strict liability for the injuries allegedly sustained by Appellant.[10] Furthermore, we cannot simply disregard the requirement that a duty of care must in fact be breached before an owner and/or occupier of land can be held liable to a non-trespassing entrant. *Mallet v. Pickens*, 206 W.Va. at 155, 522 S.E.2d at 446. As we have previously cautioned,

> Courts have traditionally recognized that, '[a] line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost

without limit. It is always tempting to impose new duties and, concomitantly, liabilities, regardless of the economic and social burden. Thus, the courts have generally recognized that public policy and social considerations, as well as foreseeability, are important factors in determining whether a duty will be held to exist in a particular situation.'

*Id.* at 156, 522 S.E.2d at 447 fn. 15.

Appellant contends that as a result of the circuit court's rulings, he is now left with a meaningless case and "an innocent victim is left without any remedy for an injury which was caused by others." Appellant asserts that there is no one responsible to sue because he cannot locate Construction Concepts, one of the decorators, or obtain valid service or jurisdiction over Beckley Hotel Limited Partnership, the entity which sold the hotel to Equity Inns, because they withdrew from West Virginia. However, we find this argument wholly unconvincing. Although Construction Concepts, Inc. has moved from West Virginia and has not yet been located, this does not mean that Appellant's counsel could not find the corporation with effort. Likewise, there is no evidence that service could not be accomplished upon Beckley Hotel Limited Partnership by delivering a copy of the summons and complaint to an officer, director or agent of the company or by publication, as permitted by Rule 4 of the *West Virginia Rules of Civil Procedure*. It appears from the record that both of these entities formerly did business in West Virginia, thus the circuit court likely maintains personal jurisdiction over them.

Rule 56 is designed to provide a method of promptly and speedily disposing of the controversy if there is no triable issue of fact. *Guthrie v. Northwestern Mut. Life. Ins. Co.*, 158 W.Va. 1, 8, 208 S.E.2d 60, 65 (1974) (*citing Weather–Rite Sportswear Co. v. United States*, 62 Cust.Ct. 373, 298 F.Supp. 508 (U.S.Cust.Ct.1969); 10 Charles

---

**10.** In his Reply brief, Appellant alleges, for the first time, that the common law of West Virginia makes an innkeeper responsible for injuries which occur to a guest. *Shifflette v. Lilly*, 130 W.Va. 297, 43 S.E.2d 289 (1947). While this may have conceivably been a plausible theory of recovery for Appellant to pursue against Equity Inns, such a claim was never asserted by Appellant below. To the extent that this issue is now being presented for the first time before this Court, we will not consider the same.

Alan Wright and Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure,* Section 2712, p. 370). Because the circuit court appropriately used summary judgment in this matter to discern that no genuine issue of material fact exists, there is no need for the Appellant to waste valuable judicial resources by continuing futile litigation against Equity Inns. Accordingly, we believe the circuit court correctly granted summary judgment and correctly refused to permit Appellant to amend his complaint against Equity Inns, and the order of the Circuit Court of Raleigh County is affirmed.

## IV.

### CONCLUSION

For the foregoing reasons, the December 10, 2007, order of the Circuit Court of Raleigh County is hereby affirmed.

**Affirmed.**

Justice WORKMAN dissents and reserves the right to file a dissenting opinion.

WORKMAN, Justice, dissenting:

This case required the Court to determine whether the circuit court erred in denying the appellant's motion to amend his complaint and refusing to disturb its prior grant of summary judgment to Equity Inns. The majority opinion concluded that the circuit court's order was proper. For the reasons outlined below, I believe that the majority of this Court has erred in upholding the circuit court's actions. Therefore, I dissent.

The appellant was legitimately upon the premises of the Hampton Inn[1] in Beckley, West Virginia, serving as a mediator for a civil lawsuit, and as such, occupied the status of an invitee and guest of the hotel. During the mediation, a thirty-three pound light fixture fell and hit the appellant in the head, causing him serious personal injury. In the original complaint and the subsequent motions to amend, the appellant attempted to assert claims sounding in negligence, *res ipsa loquitur,* and strict liability.

As a result of the majority's opinion, the hotel where the incident occurred is now free and clear of any liability. The circuit court's grant of summary judgment was based primarily on a one-page letter from a Mr. Guffey, who was hired by Equity Inns to provide an expert opinion. His opinion, based upon photographs of the fallen light provided by Equity Inns' counsel, was that the subject light fixture fell because it was improperly installed twelve years earlier by an unknown entity. Mr. Guffey stated:

The original Project Architect, since retired and his firm no longer exists, mentioned to me that the Building Owner brought in "decorators" to provide lighting and interior decor to complete the building, and that was never under his control. Somewhere in that operation the lights in question were improperly installed. The building was originally constructed by Construction Concepts, Inc. from Tennessee and was subsequently purchased several years later by Equity Inns from Virginia Inn Management the original owner.

Based upon this speculative and self-serving hearsay "mention" by an unnamed individual, from his recollection of more than twelve years in the past that another unnamed and unknown "decorator" **may** have provided "lighting and interior decor to complete the building" for the previous owner, the circuit court granted summary judgment in favor of Equity Inns. It is also important to note that only a short time passed between the Guffey report and the grant of summary judgment, allowing the appellant an inadequate period of time to conduct discovery of the appellee's expert in this complicated case where numerous parties were, through no fault of his own, unknown to the appellant.

After reading Mr. Guffey's short letter opinion in its entirety, it is unknown who the individual was who made these comments to him. We are told that he was the original project architect, but we do not know anything about this unnamed mysterious individual other than the assertion that he has since retired, and that his firm no longer exists. Likewise, we do not know if this unknown

---

1. This Hampton Inn is owned by the appellee, Equity Inns.

person, who, according to Mr. Guffey, admitted that the lighting "was never under his control," was on the job for two days, two weeks, or throughout its entire completion. We just do not know anything about him or his relationship with the prior owners of the hotel in question. In fact, we do not even know who the so-called "decorator" was who may have installed the lighting twelve years earlier. Thus, the circuit court granted summary judgment on the basis of a very sketchy opinion that was based on rank hearsay and speculation. Clearly, there were "genuine issue[s] of fact to be tried and inquiry concerning the facts [was] desirable to clarify the application of the law." *See* Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

The majority was dead wrong in holding that: "We have never applied the doctrine of strict liability to hotels and hotel owners, and choose not to do so here." There is existing law on this issue, and this Court has held that an innkeeper is strictly liable for injury to innocent guests. Existing law governing the duty of an innkeeper to a guest is based on common law, an 1899 statute, and a very limited older case law. Nevertheless, there is existing law, which the majority ignores. Not only does the majority fail to enunciate or apply existing law, it fails to clarify or modify it, if that was their purpose. It leaves completely unanswered what the majority of this Court's view is as to the extent generally of innkeepers' liability to guests and invitees. This is the kind of case that gives the legal system a bad reputation with the general public, because it not only ignores existing law, but also fails to focus on the common sense issue of who should be

responsible for injury in a set of circumstances like the one here, where a patron is injured in an established hotel business which holds itself out as a safe environment for paying guests and invitees.

An examination of the common law as modified by W.Va.Code § 16–6–22 (1899) and by subsequent case law makes clear that under existing law, the standard for liability of an innkeeper for personal injury to a guest is one of strict liability absent an affirmative showing by the innkeeper that it has lived up to its duty of due care, at which time the burden of proof would then shift to the guest. In 1947, this Court issued the opinion of *Shifflette v. Lilly*, 130 W.Va. 297, 43 S.E.2d 289 (1947), which considered the nature and extent of the liability of an innkeeper, "designated in our statute as 'hotel keeper,' for loss of goods and chattels taken and carried away from the room of a guest; and, specifically, to what extent, if any, Code, 16–6–22,[2] changed the common law liability for such loss." 130 W.Va. at 298, 43 S.E.2d at 289.

In the Syllabus of *Lilly*, this Court held:

Notwithstanding Code, 16–6–22, **the common law doctrine of liability of an innkeeper** for loss of or damage to the property of a guest, or for injury to his person, **remains in force,** and applies to the keeper of a hotel or restaurant in this State; and said statute, properly construed, relieves from, or limits, the right of recovery of a guest, only where such innkeeper, hotel or restaurant keeper **affirmatively shows** that he has met the requirements of said statute.

(Emphasis added). While the *Lilly* Court was dealing primarily with the issue of the statutory limitation of liability of an innkeep-

---

**2.** West Virginia Code § 16–6–22 (1899), provides:

It shall be the duty of the keepers of hotels and restaurants to exercise due care and diligence in providing honest servants and employees, **and to take every reasonable precaution to protect the persons and property of their guests and boarders,** but no such keeper of any hotel or restaurant shall be held liable in a greater sum than two hundred and fifty dollars for the loss of any wearing apparel, baggage or other property, not hereinafter mentioned, belonging to a guest or boarder, when such loss takes place from the room or

rooms occupied by said guest or boarder; and no keeper of a hotel or restaurant shall be held liable for any loss on the part of any guest or boarder of jewelry, money or other valuables of like nature, provided such keeper shall have posted in a conspicuous place in the room or rooms occupied by such guest or boarder, and in the hotel office and public reception room of such hotel or restaurant, a notice stating that jewelry, money and other valuables of like nature must be deposited in the office of such hotel (or restaurant), unless such loss shall take place from such office after such deposit. (Emphasis added).

er regarding the loss of **property** of a guest, it also discussed generally an innkeeper's duty to protect the **safety** of a guest, which was required under common law liability as well as by the statute at issue in that case. This Court stated that: "It seems to be conceded that prior to the enactment of Chapter 48, Acts of the Legislature, 1899, the liability of an innkeeper for the loss of property of a guest, while the relationship of innkeeper and guest continued, was, in effect, absolute." 130 W.Va. at 299–300, 43 S.E.2d at 290.

As to personal injury to a guest, this Court further stated:

In the old days when inns were remote from the towns, and when highwaymen were rampant, it was not an uncommon thing for highwaymen and innkeepers to be in league together, and it was realized at a very early stage in our existence that the only safe thing for the general public was **that the innkeeper should be responsible for the safety of his guest** and his guest's goods. That law still remains.

*Id.* (Emphasis added). The Court in *Lilly* explained that:

The **strict rule of liability** [against an innkeeper] is generally justified on the ground of public policy. It is said to have been imposed for several reasons, namely, because it was a good policy to encourage convenient and secure intercourse between different parts of the kingdom; because travelers and strangers must of necessity trust to and confide in the honesty and vigilance of the innkeeper and those in his employ.

130 W.Va. at 301, 43 S.E.2d at 291. (Emphasis added). Moreover,

. . . of the two, the innkeeper is better able to protect himself against loss, while the guest is practically helpless to ascertain or enforce his rights. It is no more a hardship for an innkeeper than for his guests to sustain a loss, neither party being at fault, especially since the former undertakes a trade with a full knowledge of his liabilities, for he may so regulate his charges as

to indemnify himself. Moreover, he has special privileges.

*Id.* (Citation omitted).

The *Lilly* Court recognized that W.Va. Code § 16–6–22 instructed innkeepers "to take every reasonable precaution to protect . . . his guests," and then limited liability only as to property loss and only under certain circumstances. Neither the statute nor the Court in *Lilly* limited liability in any manner for an innkeeper's failure to protect the safety of its guests. 130 W.Va. at 305, 43 S.E.2d at 293. The Court stated:

We are of the opinion that the same rule should be applied to the duty to exercise due care and diligence in providing honest servants and employees, and the other requirements of the statute. That, we think, always was the duty of an innkeeper, even though whether he exercises such due care was unimportant, inasmuch as his liability was, in effect, absolute in any event. In our opinion, **it was not the intent of the Legislature in enacting the 1899 statute, to destroy the common law absolute liability, and to set up a new standard in respect to the duty of innkeepers, but merely to give relief to innkeepers in the way of providing means of relieving themselves of all liability in certain instances, and limiting liability in others,** provided certain things, namely, the exercise of due care and diligence in providing honest servants, and the exercise of reasonable precaution to protect the person and property of guests should be established.

130 W.Va. at 306, 43 S.E.2d at 293. (Emphasis added). The Court further explained:

Under our statute, all he has to do is to establish that he has exercised due care in providing honest servants and employees, and **has taken every reasonable precaution to protect the person and property of his guests.** This is not difficult to establish where such care has been exercised, and difficult to disprove. So, in effect, the limitation provided by the statute is open to all reputable innkeepers, where in their own interest, care is taken to provide honest servants. If such care is not taken, the innkeeper should bear the

burden of his negligence because the guest is, to a very large degree, at his mercy, and, on grounds of public policy, entitled to his protection.

130 W.Va. at 307–308, 43 S.E.2d at 294.

Thus, the *Lilly* opinion, read in the context of common law and the 1899 statute, seems to have established a hybrid strict liability-negligence standard on the duty of innkeepers. While making clear that innkeepers remain strictly liable for personal injury to guests, it also enunciated an opportunity for an innkeeper to make an affirmative showing that he "has taken every reasonable precaution to protect ... his guests." 130 W.Va. at 307–308, 43 S.E.2d at 294. Existing law must be read then to place the initial burden of proof upon the innkeeper, not the guest. Absent an affirmative showing of non-negligence, an innkeeper is subject to strict liability.

Essentially, then, this Court in *Lilly* reiterated that, except in the case of the statutory limitation of liability for theft, the absolute liability for the injury to a guest remained intact absent an affirmative showing by the innkeeper that it met its duty of care. The Court in *Lilly* concluded that, "[w]e see no real hardship imposed on the innkeeper, in our interpretation of the statute [limiting recovery for theft] as a mere limitation on the common law rule, and not as abolishing the same and setting up a new standard." *Id.* The Court declared:

> The reasons that led up to the adoption of the stringent common-law rule for the protection of the traveling public in earlier times are not altogether wanting in principle at the present day. There is as much occasion for traveling now as then, and, in fact, the amount of travel is immeasurably greater today than many years ago.... It would seem to be just, therefore, that ... the innkeeper should at least be called upon for an explanation, he having been placed in full charge of the property, and being in receipt of a valuable consideration for its safe custody.

130 W.Va. at 308–309, 43 S.E.2d at 295. (Citation omitted). Further, by requiring an affirmative showing by the innkeeper that he has met his duties and responsibilities, the *Lilly* Court essentially places the initial burden on the defendant innkeeper when a guest is injured through no fault of his own. The failure to make such an affirmative showing results in strict liability.

Similarly, in *Early v. Lowe,* 119 W.Va. 690, 692, 195 S.E. 852, 853 (1938), this Court explained:

> It is the duty of an innkeeper or hotelkeeper to keep his buildings and premises in a condition reasonably safe for the use of his guests, and where his negligence in this respect is the proximate cause of an injury to a guest, he is liable therefor, provided the guest at the time is in a place where he has a right, and is reasonably expected, to go. The foregoing rule has been applied in cases involving unguarded or unlighted stairways, unguarded elevator shafts, defective railings, unguarded openings in platforms of fire escapes, defective or insecurely or unsafely fastened window screens, defective chairs, and an unsafe room in which the guest was placed.

This is precisely the situation with the case at hand. The fact is that Equity Inns had complete control over this hotel and light fixture for nearly ten years by the time the light fixture fell on Mr. Crum's head. Under our law it owed Mr. Crum a duty. Moreover, that duty existed whether or not Equity Inns owned the hotel in question for ten years or ten days. Equity Inns was clearly responsible for cleaning and inspecting the light fixtures during the past ten years, and was responsible for keeping its buildings and fixtures in a condition reasonably safe for use by its guests. Thus, under existing law, Equity Inns was absolutely liable for injury to Mr. Crum, absent an affirmative showing by Equity Inns that it exercised due care to him. Had Equity Inns met this affirmative duty, then the burden of proof would have transferred to the plaintiff-appellant at that time. Thus, in consideration of the aforementioned, and separate from the fact that I believe the circuit court erred in granting summary judgment to Equity Inns, the court should have also granted Mr. Crum's motion to amend to assert a strict liability claim providing him an opportunity to litigate that issue.

Many other jurisdictions share this view. For example, in *Fontana v. Wilson World Maingate Condominium*, 717 So.2d 199 (Fla. App. 5th Dist.1998), the Florida District Court faced a similar situation as this Court faced with the falling light fixture. In that case, a guest of the hotel sat in a chair which was defective causing it to collapse and injure her. At the conclusion of her case, the lower court directed a verdict in favor of the hotel because there was no evidence of actual or constructive notice as to the condition of the chair. The District Court reversed the lower court and held that:

> Even though a hotel is not an insurer, it nevertheless owes its guests the duty of ordinary and reasonable care. One who conducts a business in which the public is invited to enter owes a duty to such invitees with respect to their safety.... The situation involved in this case is not like a normal slip and fall case in which the danger is a pool of liquid or a banana peel on the floor which would be readily apparent from a visual inspection at reasonable intervals; here, the defect was hidden. Housecleaning personnel merely looking at the chair would not have observed danger.

717 So.2d at 199–200. The Court further reasoned:

> Even though the defendant might have put on contrary evidence had the directed verdict not been entered, the fact is that the only record evidence is that appellee had no procedure in place for the inspection or maintenance of its furnishings. Thus, at the time the directed verdict was entered, there was evidence that appellee did not check the condition of its furniture to see that it was in a safe condition. Even ordinary wear and tear over a period of time can become a hazard. The jury could have found that the owner's ostrich-like approach to the safety of its premises did not meet its obligations to its invitees. In a situation such as this ... where an overnight guest is injured because of a defective condition that existed prior to such guest checking into the hotel, a condition that would have been discovered upon a

reasonable inspection, the issue of negligence should have gone to the jury.

717 So.2d at 200.

Regarding Mr. Crum's case, the majority's blanket statement that: "In West Virginia, landowners and occupiers such as Equity Inns are not liable in negligence for injuries that occur to non-trespassing entrants of their land, unless such landowners or occupiers breach their duty of reasonable care under the circumstances" was based on their citation of *Mallet v. Pickens*, 206 W.Va. 145, 155, 522 S.E.2d 436, 446 (1999). *Mallet*, however, is distinguishable both factually and legally from the situation at hand.

In *Mallet*, Patricia and Ernest Mallet, decided to visit their good friends, the Pickens family. The Mallets, however, did not realize that the Pickenses were having work done to their home resulting in the only access to the front door of the house being a set of temporary, wooden stairs, which did not have a railing or banister. While exiting the home, Ms. Mallet fell, striking her head on a concrete block. She suffered broken bones in her face that required surgery. In *Mallet*, the circuit court found that there was no insurance coverage for Ms. Mallet based upon common law distinctions between an invitee and licensee. In reversing the circuit court, this Court abolished such a distinction between an invitee and licensee and found that coverage for Ms. Mallet's injuries did exist. In Syllabus Point 4 of *Mallet*, the Court held specifically that:

> The common law distinction between licensees and invitees is hereby abolished; landowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances. We retain our traditional rule with regard to a trespasser, that being that a landowner of possessor need only refrain from willful or wanton injury.

206 W.Va. at 155, 522 S.E.2d at 446.

The holding in *Mallet* did not alter the common law duties imposed between an innkeeper and a guest due to the special relationship that exists between the two, nor the older case law which was directly on point to the issue of innkeeper liability. Likewise, the *Mallet* Court did not address this Court's

previous ruling in *Lilly*, or the impact of W.Va.Code § 16–6–22 on an innkeeper's duty to take "every reasonable precaution to protect ... his guests." 130 W.Va. at 307–308, 43 S.E.2d at 294. It did not address those issues because they did not apply to the situation in *Mallet*. The Court in *Mallet* dealt with the specific situation of a neighbor visiting another neighbor's home wherein an injury occurred in an area that was under construction. This involved a social guest, not a paying guest. I see nothing in *Mallet* that alters a duty of an innkeeper to a guest based upon our existing law.

In the situation at hand, on the day in question, Mr. Crum entered the conference room of the hotel to conduct mediation in a civil lawsuit. Then, through no fault of his own, a thirty-three pound light fixture fell on his head. Although a very sketchy expert opinion was rendered concluding that Equity Inns was without fault, the appellant never had a meaningful opportunity to conduct discovery of this expert and refute this opinion. Even if the Guffey opinion letter was determined to constitute a prima facie showing of the defendant having met its affirmative duty to the plaintiff, the appellant should have been able to pursue further discovery on the alleged negligent maintenance of the hotel and what duties and obligations, if any, were assumed by Equity Inns when it purchased the hotel. It is my belief that the better view would be for strict liability to be imposed upon an innkeeper for personal injury to a guest who is without fault. If that is not the majority view, the least they could have done was to clarify or modify existing law to their liking. The majority does absolutely nothing to enunciate existing law, nor to modify or clarify it. The majority leaves the law even murkier than it has been for the last sixty-two years, since this Court issued the opinion of *Lilly*.

Therefore, for the reasons stated above, I respectfully dissent.